## American Railway Express Company v. Asher, et al.

(Decided February 8, 1927.)

### Appeal from Bell Circuit Court.

1. Joint-Stock Companies and Business Trusts—Joint-Stock Company May be Sued as Corporation (Constitution, Section 208; Ky. Stats., Section 457).—Under Constitution, section 208, and Ky. Stats., section 457, a joint-stock company may be sued as a corporation, and the members thereof need not be sued individually.

2. Appeal and Error—Court of Appeals Must Presume, on Appeal from Judgment Against Joint-Stock Company Appearing and Answering, that Individual Members Appeared and Answered.— If a joint-stock company, appearing and answering in action against it, has no separate existence from individual members thereof, the Court of Appeals must conclusively presume, on appeal from judgment against it, that one or more of such members appeared and caused answer to be filed for it.

3. Joint-Stock Companies and Business Trusts—Articles of Association Held to Show Joint-Stock Company to be Corporation for Purposes of Suit (Constitution, Section 208; Ky. Stats., Sections 457, 539).—A joint-stock company's articles of association, con-

taining all points required in articles of incorporation by Ky. Stats., section 539, held to show that it is a corporation within Ky. Stats., section 457, and Constitution, 208, for purposes of suit against it.

4.  Joint-Stock Companies and Business Trusts—Judgment Against Joint-Stock Company Held Valid Against it and Shareholders' Joint and Partnership Funds.—A judgment against a joint-stock company held valid against it and the joint and partnership funds of its shareholders.

5.  Constitutional Law—Contention that Members of Joint-Stock Company Cannot be Made Corporate Entity Suable in its Own Name Without Impairing Contract Obligation Held Without Merit, in View of Articles of Association (Constitution U. S., Art. 1).—Contention that individual members of a joint-stock company, without their consent, cannot be made a legal or corporate entity, capable of suing and being sued in its own name, by statute or judicial decision, without impairing obligation of contract, in violation of Constitution U. S., art. 1, held without merit; articles of association giving members consent to suits against company by clear intendment.

6.  Joint-Stock Companies and Business Trusts—Persons Obtaining Judgment Against Joint-Stock Company were Creditors Entitled to Recover Amount from Corporation Taking Over its Property.—Persons obtaining a judgment against a joint-stock company were creditros thereof, entitled to recover the amount of such judgment from a corporation taking over its property.

7.  Joint-Stock Companies and Business Trusts—Evidence Held to Show that Trustees Held Stock of Corporation, which was Sued on Judgment Against Joint-Stock Company, for Distribution Among Latter's Shareholders.—In action against corporation for amount of judgment against joint-stock company, which turned over all its tangible property in the United States to defendant in return for capital stock of latter, evidence held to show that such stock was being held by trustees for distribution among joint-stock company's shareholders.

8.  Constitutional Law—New Express Company's Property, Received from Old Companies for Period of Federal Railroad Control, Held Not Taken Without Due Process on Judgment Against One of Them (Constitution U. S., Amend. 14).—The American Railway Express Company, organized under contract between United States and four express companies, which turned over their tangible property and business to it in exchange for stock, held liable for amount of prior judgment against one of such companies as against contention that its property would thus be taken without due process, in violation of Constitution U. S., Amend 14; property held by it being that of old companies for period of federal control of railroads.

LOW & BRYANT for appellant.

N. R. PATTERSON for appellees.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

On the 8th day of June, 1918, the appellees, C. B. Asher and S. M. Slusher, filed their common law action in the Bell circuit court against the Adams Express Company. Process was issued and on the 10th day of June, 1918, and served on M. C. Shufelbarger as agent of the defendant in that action. On the 6th day of February, 1918, the Adams Express Company appeared in the Bell circuit court and filed its answer. Thereafter the case was tried in the Bell circuit court on March 1, 1921, and the jury returned a verdict for $350.00 in favor of the plaintiffs. All these facts appear in the record and by stipulation they are agreed to. On May 30, 1925, an execution was issued on the judgment and was returned no property found. On July 8, 1925, the appellees instituted suit in the Bell circuit court against the American Railway Express Company and the Adams Express Company wherein it was sought to obtain a personal judgment against the American Railway Express Company for the amount of the judgment, interest and cost obtained against the Adams Express Company in the suit above referred to. The summons was executed in the last mentioned suit on M. C. Shufelbarger as agent of the appellant. It is alleged in the petition that about the first day of July, 1918, the American Railway Express Company was organized for the express purpose of taking over the defendant, Adams Express Company, and other express companies in the United States, and that the Adams Express Company transferred and turned over all of its property of every kind and character in the state of Kentucky and elsewhere to the appellant and that appellant accepted and received the property and in consideration therefor issued part of its capital stock to the Adams in payment of the assets so turned over to it; that by reason of the facts alleged in the petition appellant became liable to appellees for the amount of any judgment obtained by them against the Adams Express Company in 1921, on their suit filed against it in January, 1918.

After filing its demurrer, which was overruled, the American filed its answer in which it traversed the allegations of the petition and pleaded affirmatively that it did not take over all of the property of the Adams and that it was not responsible for the payment of the judg-

ment; that the judgment was void because taken against the Adams Express Company and not against the individual members thereof. The American then sets out in the third paragraph of its answer how it came to take over the assets of the Adams and interposes the plea that it would be taking its property without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States and that it would also be an impairment of the obligation of its contract in violation of the First Article to the Constitution of the United States to require it to pay judgment against the Adams.

Proof was taken by appellant and certain exhibits were introduced in evidence. No proof was taken by appellees. Upon final hearing the lower court overruled the general demurrer filed by appellant to the petition of appellees, sustained the general demurrer to the second paragraph of the answer of appellant and rendered judgment in favor of appellees against appellant for the sum of $375.98, with interest from March 1, 1921.

Appellant professes to be very greatly dissatisfied with the judgment of the lower court and has submitted an argument consisting of seventy-eight printed pages in an effort to show that this court should grant it an appeal and reverse the judgment of the lower court, directing that the petition be dismissed.

Appellant, in its brief, states that the questions of law involved on the appeal are:

"(1)  Whether or not a judgment of the Bell county circuit court, herein sued upon, is a valid judgment against the members or associates composing the Adams, notwithstanding the fact that no service of summons or legal process of any description was made upon any member or partner or associate composing the said joint stock association.

"(2)  Whether a joint stock association, organized under the common law right of contract of its members can, by statute or judicial decision of a state, and without the consent of the members, be made a legal or corporate entity capable of suing and being sued in its own name, without impairing the obligation of a contract in violation of the Constitution of the United States.

"(3)  Whether or not it is due process of law to take the property of the American Railway Ex-

press Company upon a judgment entered in a suit brought against the Adams and in which no associate or member of that association was served with legal process or made a party to said suit.

"(4)   Whether it is not impairing the obligation of a contract to hold the American Railway Express Company liable in a suit in a state court brought upon a judgment rendered in that court in a suit against the Adams and in which no associate or member of that association was served with legal process or made a party."

The first question submitted to us for consideration is whether the judgment which is the basis of this suit is void because it is a judgment against the Adams Express Company and not against the members or associates composing that company.   The point is made that no process was executed on any member or partner or associate of the Adams and that the service of process on Shufelbarger as the agent did not give the court jurisdiction to render the judgment.   It is important that it be kept in mind that the Adams Express Company appeared in the case and filed an answer putting in issue the allegations of the petition.   Counsel for appellant place no stress on this particular point.   It is insisted that the jurisdiction in the case in which the judgment sued on was rendered could not be over the individual members of the Adams Express Company, who were not served with notice of suit or named as parties and against whose property no execution was issued or could be issued.   It is argued that as the Adams Express Company is an unincorporated association the individual members are liable for the debts of the concern as partners, and that, in the absence of a statute, the firm cannot be sued, but all of the members must be made parties, since such bodies have no legal entity distinct and apart from their members.   Authorities are cited in support of the argument.   However, the cases relied on discuss firms of an entirely different character from the Adams Express Company.

Section 208 of the Constitution of Kentucky is as follows:

"The word corporation as used in this Constitution shall embrace joint stock companies and associations."

Section 457, Ky. Stats., is in part as follows:

"The words 'corporation,' 'company' may be construed as including any corporation, company, person, persons, partnership, joint stock company or association."

We have authority, therefore, in Kentucky, both in the Constitution and the statutes, for declaring a joint stock company such as the Adams Express Company a corporation, and this court has held that it is a corporation within the meaning of the Constitution and the statue. Adams Express Company v. Schofield, 111 Ky. 832, 64 S. W. 903; International Harvester Company v. Commonwealth, 147 Ky. 655, 145 S. W. 393; Stearns Coal Company v. McPherson, 144 Ky. 730, 139 S. W. 971; American Railway Express Company v. Commonwealth, 190 Ky. 636. We have no disposition to modify the decisions on this point. We have our attention called to Newman's Pleading and Practice, section 156, in the brief of appellant. It is there stated that if an association of persons be not incorporated or authorized by statute to be sued, no action can be brought against them by their aggregate or assumed name, but they must be proceeded against individually and they must be individually named as defendants in an action. We have just shown by reference to the provision of the Ky. Constitution and statute that there is authority to sue such a concern as it is treated as a corporation. Appellant continues its quotation from Newman's Pleadings as follows:

"If, however, in such case (a case where the individual members should be made parties) the defendants should appear and without objection answer in the name of the firm or company the judgment would no doubt be valid and bind the company and their joint or partnership funds."

The record discloses that the Adams Express Company did appear and answer in the case in which the judgment sued on was obtained. Certainly if the Adams Express Company has no separate existence from the individual members of the firm we must conclusively presume that one or more of the individual members appeared and caused answer to be filed for the company.

We have before us probably for the first time in this court a copy of the articles of association of the Adams

Express Company, and a brief consideration of these articles confirms the correctness of the opinions of this court holding that it is a corporation for the purposes of suit. It possesses every element of a corporation under the laws of the state of Kentucky. There are nine particular points which must be in the articles of incorporation of any incorporated company under the provisions of sec. 539, Ky. Stats.: (1) The name of the corporation must be given, and in the articles of the Adams Express Company its name is stated as the Adams Express Company. (2) The name of the city or town and county in which its principal office or place of business is to be located. In the articles of the Adams the principal office must be located in the city of New York. (3) The nature of the business or objects or purposes to be transacted, promoted or carried on must be stated, and the articles of the Adams Express Company state that the business to be carried on is that of express forwarding from, between and to any places, including the forwarding of all parcels, goods, specie, bullion, etc. (4) The amount of its capital stock and the number of shares into which same shall be divided. The articles of the Adams state that the property of the association shall be divided into 12,000 shares. (5) The names and places of residence of each of its stockholders, and the number of shares of stock subscribed by each. The articles of the Adams give the names of the shareholders and the number of shares subscribed by each. (6) The time it is to commence and the period it is to continue. The articles of the Adams show that it commenced on the first day of July, 1854, and was to continue until the first day of July, 1948. (7) By what officers or persons the affairs of the corporation are to be conducted, and the time and place at which they are to be elected. The articles of the Adams provide that the business shall be under the control of a board of managers consisting of nine and a president, vice president, secretary and treasurer and other officers to be selected by the board of managers and that they shall be elected at meetings called by the board to be held at the principal office in New York, and that such a meeting may be called by the holders of one-third of the capital stock in the event the board of managers does not call the meeting. (8) The highest amount of indebtedness or liability which the corporation may at any time incur. The articles of the Adams do not allow any indebtedness but provide for the raising

of additional funds by increase in the capital stock. (9) Whether the private property of the stockholders shall be subject to the payment of corporate debts, and if so to what extent. The articles of the Adams do not make the shareholders directly liable for the debts of the company but provide for an assessment against the shareholder if it be necessary to raise money, but if such assessment is not paid the stock of the defaulting member must be sold by the corporation, and if there is any balance of the assessment unpaid the corporation may collect the balance by suit. The articles provide that the amount of capital surplus and reserve fund shall be used as the board of managers may from time to time determine if it be sufficient to conduct the business of the association and to provide for losses and protect the shareholders against personal liability or assessment.

From examination of the provisions of the charter of the Adams Express Company, it possesses all the elements of a corporation and has the power under its charter to conduct business as a corporation. The company cannot be dissolved except as provided in the articles, and the owners of the shares have no power to dissolve it except in the manner provided in the articles, and in case of the death of a shareholder no dissolution shall take place but the company will appraise the value of the shares and purchase them from the estate of the decedent. In addition to the board of managers, a board of trustees appointed by the manager shall have charge, possession and control of such property, investments and surplus funds of the association as may from time to time be transferred to them by the board of managers. They are designated the trustees of the Adams Express Company, and a majority of the members may act. Such funds as are not transferred to the trustees must be held, managed, used and applied or invested as the managers from time to time determine to be for the best interest of the association. The shareholders seem to have nothing to do with the control or investment of the property of the company and they may not declare its dissolution. The property is all held and subject to the control and management of the board of trustees or the board of managers. The board of managers fix their own compensation as well as the compensation of all other officers. The articles may be amended or altered by three-fourths in interest of the shareholders, and all

such amendments shall be reduced to writing and signed by the shareholders approving such amendments, and those who dissent are entitled to receive the value of their shares, the valuation to be made by the president, secretary and treasurer of the company.

After considering the articles of association of the Adams Express Company we are convinced that this court has not been in error in holding that it should be treated as a corporation in this state. Having reached that conclusion it follows that the judgment which is the basis of this suit was a valid judgment against the Adams Express Company and the joint and partnership funds of its shareholders. No suit could be instituted against the individual shareholders, but the suit must have been against the Adams Express Company, and when judgment was obtained, if that company did not have funds sufficient to pay the judgment under its articles, it could make an assessment against the individual shareholders.

This disposes of the first question of law involved on this appeal and we will now pass to the second. The second question is whether by a statute or judicial decision of a state and without the consent of the members, the individual members of a joint stock company, such as the Adams Express Company, can be made a legal or corporate entity capable of suing and being sued in its own name without impairing the obligation of a contract in violation of the Constitution of the United States.

There is no basis for the argument offered in support of this question. The articles of association of the Adams Express Company by their clear intendment give the consent of the members to suits against the company. The company holds the property, manages it and controls it and pays dividends to the shareholders, or in the case of such losses as make an assessment necessary, the shareholders agree in the articles that an assessment may be made to take care of any such loss. Having this view on this question it is not necessary to discuss what would have been the effect if the articles of association had constituted an ordinary partnership.

The third question of law as set out above and the fourth may be considered together and the question may be treated as whether it is a denial of the due process of law to take the property of the American Railway Express Company upon a judgment entered against the Adams Express Company for a liability of that company

prior to the time that its property was taken over by the American. These matters were all fully discussed by this court in the case of American Railway Express Company v. Commonwealth, 190 Ky. 636. If the court in that case had been in possession of all of the facts it would have reached its conclusions without so much difficulty. The opinion makes no reference to the agreement between the United States and the express companies entered into on the 21st day of June, 1918. We find in the opinion last mentioned this language:

> "Under all the facts and circumstances of this case, the American might well be held liable on the theory that it was merely a continuance of the old companies under a new name."

In the brief which has been filed for appellant it is urged that the opinion in the previous case rested upon two facts which appear in the record and four assumptions which appellant says had no support in the record. The facts were (1) that the appellant took over all of the express operating property of the Adams employed in its domestic express business, and (2) that the appellants paid the Adams no consideration except the issue of its stock to the Adams. The assumptions were, so appellant says, (a) that the Adams was a corporation; (b) that the plaintiff there was a creditor of the Adams at the time of the sale; (c) that the stock delivered to the Adams was distributed among the shareholders of the Adams or delivered to a trustee for such distribution; (d) that the stock of the appellant was not valid consideration for the property.

It is then argued that the two facts proven in the former case are in proof in this case but that the four assumptions by the court in the other case are not only not proven in this case but are conclusively shown to be contrary to fact by uncontradicted evidence.

So far as the first assumption is concerned, that is, that the Adams was a corporation, we have disposed of that already, and we still say that it was and is a corporation in the state if it still has its existence under its articles of association. The second assumption was that the plaintiff in the former case was a creditor of the Adams at the time of the sale. We have already held that appellees, by reason of their judgment of the lower court, were creditors of the Adams, and this disposes of

the second assumption. The third assumption was that the stock delivered to the Adams was distributed among the shareholders of the Adams or delivered to a trustee for such distribution. The proof as to what became of the stock in this case is meager. The only evidence is that given by Mr. Barrett, the president of the Adams Express Company. He stated that no distribution of the assets of the Adams Express Company had been made to its stockholders; that the stock of the American Railway Express Company subscribed for by the Adams was still in the possession of the Adams; that none of it had been distributed to the shareholders; that all of it had been in possession of the Adams at all times except a part of it that was turned over to the Director General and later repurchased. There is no attempt to say whether this stock is held by the Adams for the purpose of distribution among the shareholders, and we think the court was entirely justified in the previous opinion in assuming that it was held for distribution, and the facts deduced in the present case are conclusive that the Adams could hold the stock for no other purpose. It has sold all of its property, according to this record. Its tangible property in the United States passed to the American and its foreign property has been since sold and its money order business has been transferred to the American, so nothing could be left unless it should be what the company calls its treasury assets, and if they are not being used in carrying on the business provided for in the articles of association they must be held for distribution. There is some proof that this company, which a few years ago had 6,000 offices in the United States and a vast business in foreign countries, has recently started in business again in the metropolitan district of New York, by transferring money from one point to another in that district. This does not satisfy the court that the Adams Express Company contemplates using its treasury assets for the development of a new business. All of the assets of the Adams except that actually used in operation by the provisions of its articles of association were placed in the hands of trustees, and if it were an assumption on the part of the court in the previous opinion that the stock in the American was being held by trustees for distribution to the stockholders, it has been converted into a fact by the proof in this case. The last assumption is that the stock of the appellant was not a valid consideration for the property taken over by the

American. This question is determined in the former opinion and we have no disposition to go into it now except as it may enter into the general discussion of the arrangements whereby the American took over the Adams.

There is no reason which we can perceive for modifying the opinion in the former case, and we might well end this opinion here, but it may be worth while to go a little further in the development or enlargement of the above quoted statement from the former opinion. We have examined with care the agreement between the United States and the express companies which resulted in the formation of the American Railway Express Company. On December 28, 1917, the President of the United States, acting under the war powers conferred on him by Congress, assumed control of the railroads in the United States and designated an agent under the title of Director General of Railroads to have charge of the control and operation of railway lines within the United States. Four of the larger express companies, to-wit, the Adams Express Company, the Southern Express Company, the American Express Company and Wells, Fargo and Company had contracts with systems of railroads and had been operating over such railroad lines under contract. When the railroads were taken over by the government it became an important question to the express companies as to whether their contracts would be recognized and whether they would be allowed to continue the operation of their business over the railroads with which they had contracts. The express companies were not taken over and the Director General of Railroads refused to allow them to operate as separate entities or organizations. The Director General insisted that the express business must be unified so that there might not be any conflict in operating over the unified system of railroads, and it was his suggestion that a new express company should be organized to act as the agent of the Director General. It seems to have been in the mind of the Director General and the express companies concerned that instead of operating separately they should create a new corporation which should act both as agent for the government of the United States and for the express companies concerned. The express companies mentioned were to turn over their tangible property to this new concern, and in fact turn over their entire systems of operation, and in consideration of their

turning over their property and business they were to receive stock in proportion to the value of their assets so turned over. The American Railway Express Company when it was organized, as it existed in the minds of all the parties interested, was nothing less than a merger or combination of the other separate companies under the arrangements and limitations worked out by the express companies and the Director General. If that is true the stock which was issued for the property was a certificate showing the interest which the old concern had in the new concern and to be used as a basis for the distribution of dividends. The agreement by the United States and the express companies is made a part of this record as evidence as well as the approval of the express companies mentioned, through their boards of directors, of the agreement entered into between the Director General and the express companies. Later a contract was entered into by the Director General and the American Railway Express Company, that is, after the arrangements for the unification of the express companies had been carried out. This contract is in the record as evidence. There is, however, one omission from this record which may have been supplied by appellant, and that is the charter of the American Railway Express Company. It contains information which would be of material assistance in reaching a conclusion in this case, but as it is not here we can only assume that it was organized in accordance with the provisions of the contract between the United States and the express companies entered into on the 21st day of June, 1918.

This agreement is introduced by a lengthy preamble. It is set out that the President took over the railroads on December 28, 1917, and that since that date certain railroads and systems of transportation had been under the control and supervision of the United States; that the President by proclamation had authorized William G. McAdoo, as Director General of Railroads, to make any and all contracts or agreements found necessary or expedient in connection with federal control of systems of transportation; that the railroads and systems of transportation that had been taken over included railroads which previously had written contracts agreeing to furnish to the individual companies certain privileges for carrying on the express business; that the railroad companies, by reason of federal control, were unable to carry out their contracts with the express companies "so long

as the railroad properties formerly operated by them, respectively, remained under the federal control;" that the Director General had found it inexpedient to carry out the individual contracts made between different railroads with the express companies; that the Director General had decided to secure the continuance of the trained forces of said express companies so far as might be necessary in the proposed express transportation business; that "said express companies are willing to aid in placing at the service of the Director General their operating property and their trained forces upon reasonable terms;" that the Director General "is of the opinion that, the express transportation business upon the railroads and systems of transportation under federal control, can be most efficiently carried on through the agency of a single corporation, which shall act as the sole agent of the government in conducting said business."

We have briefly referred to the provisions in the preamble to the contract between the United States and said express companies. The contract then sets out the agreements which had been reached between the Director General and the representatives of the express companies. The express companies agreed to "cause to be organized a corporation for the purpose of carrying on for the Director General the express transportation business upon the railroads; that the capital stock of the corporation to be organized should not exceed $40,000,000.00, and the shares to be subscribed and purchased at par by the express companies before named;" that the express companies should convey and transfer to the new corporation all property owned and used by them in carrying on their express transportation business in the United States, including supplies and materials on hand; the new corporation was to be furnished cash by the express companies organizing it in sufficient amount to constitute reasonable working capital; that the new corporation should make no debts except ordinary bank or commercial loans without the approval in writing of the Director General; that no lien of any kind should be placed upon any property of the new corporation without prior approval of the Director General; that all contracts which the express companies had with the railroads should be canceled and annulled from and after July 1, 1918; that the express companies should assign as far as possible all contracts with any rail, water or electric lines not

taken over by the government to the new corporation, and that the said express companies should not engage in express transportation business in the United States during the period of their contracts between the Director General and the new corporation except upon the approval of the Director General; that the Director General would enter into a contract with the new corporation when it should be organized in accordance with conditions set forth in a certain exhibit attached to the contract. We find this provision in the contract between the United States and the express companies, to-wit:

> "It is the intention that the provision made herein for carrying on the express transportation business through the agency of a single corporation shall continue in effect only during the period of federal control, and nothing herein contained shall be construed as sanctioning any combination or merger of the properties or business of the express companies to last beyond that period."

This provision speaks for itself. The combination or merger of the properties of the express companies was sanctioned only during the period of federal control. There is another provision which throws much light on the question before us, and it is as follows:

> "Wherefore it is agreed that the express companies shall maintain their independent corporate existence, and that upon the termination of federal control, the property herein agreed to be conveyed by each of them to the new corporation (or the equivalent of such property) shall be reconveyed to it by the new corporation (back to them) at a valuation to be agreed upon, or in the event of disagreement to be fixed by the Interstate Commerce Commission."

If the American Railway Express Company's organization, pursuant to the agreement above referred to, was not a merger of the other express companies, including the Adams, we are at a loss as to how the said contract may be construed. The property which the American Railway Express Company took over was not its property but the property belonged to the respective companies and must be returned to the respective companies at the conclusion of the period of federal control.

It would make this opinion too long to go into the provisions of the contract between the Director General and American Railway Express Company after it was organized, but we will take notice of a few of its provisions. The contract was to continue until July 1, 1922, and after that date it might be canceled by either party by the giving of six months' notice. The contract between the Director General and the American deals with the methods of operation and with the distribution of income. The American Railway Express Company, it seems from the contract, was to have 5% on the value of the property turned over to it by the other express companies. This amount was subject to increase, depending upon the income, a complete agreement as to distribution having been worked out.

We do not know what has taken place since the first of July, 1922, as the record is silent. We do know, however, that the Adams Express Company turned over to the American Railway Express Company all of its business in the United States except its money order business, and that it retained its foreign business. Later, according to the evidence in this case, it disposed of its money order business and also of its foreign business. We are unable to discover from this record any assets which the Adams Express Company now holds which could be subjected to the payment of the debt of appellees, but the appellant, from the evidence in this record, holds property belonging to the Adams Express Company which it obtained from it, and we see no reason to depart from the former opinion, and for that reason the appeal prayed for herein is denied.

Judgment affirmed.