## Jackson v. International Union Of Operating Engineers et al.

February 24, 1948.

Rehearing denied June 4, 1948.

486

S. J. Stallings and Charles B. Zirkle for appellant.

Cohen & Fisher and Lawrence S. Grauman for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Affirming in part, reversing in part.

Appeal from a judgment sustaining special demurrers of Union defendants and general demurrer of defendant Cross & Son, Inc., employer, to Jackson's petition. The first were the International Union of Operating Engineers affiliated with A. F. of L., and members thereof, and its Local Union No. 181, and members, by and through J. E. Pirtle as business agent of the parent and local Unions. The petition named C. W. Christensen and ten other persons (including Pirtle), "individually and as members having and holding interests in common with all other members of the Unions."

Appellant alleged the Unions were "each composed of hundreds of thousands of members, including the individual persons named; a membership so large it would be impracticable to bring them before the court within a reasonable time; that the question involved was of common and general interest to the members of both Unions, and plaintiff asked the right to prosecute his action against them." It was alleged that Pirtle was business agent of both the local governing authority of the organizations.

Jackson at all times complained of was employed by Cross & Son as an oiler. Prior to his employment the Unions had entered into agreement with his employer "whereby said Unions became the sole bargaining agent in the employment of operating engineers," and Cross & Son had bound itself by the following part of the contract:

"The contractor agrees to employ, through local Union 181, only members who are in good standing with the Union in payment of their dues, to operate all machinery and equipment. Good standing members of the Union shall be interpreted to mean those who are not under discipline or penalty invoked by the Union. Upon written notice by the Union to the contractor, through registered mail that a certain individual, or individuals are not in good standing, it shall be sufficient notice for the removal of the individual from the job, under the terms of this contract."

Jackson alleges that while he was employed "Pirtle and other members of" the International, its affiliate, and the Local Union, willfully, knowingly and fraudulently conspired and agreed among themselves, without just reason or grounds to cause him to be discharged from working for Cross & Son, and thus to be placed in the position where he could not obtain like, or any employment. That in furtherance of the plan and purpose of the unlawful conspiracy, the Unions, through their business agent, *"while acting in the scope of his authority,* demanded of his employer immediate suspension," and that the employer acting upon the request suspended him on July 19, 1946, and refused to reemploy him; "that the Unions and Pirtle have willfully, etc. united to deprive him of his rights derived from

the contract, and although a member of the Unions in good standing, the Company dismissed him without regard to removal procedure, as set out in the contract.''

He said that prior to the action on the part of defendants his salary was $75 per week; that due to their actions he is refused employment by Cross & Son and was unable to secure similar work at like wages, because the ''defendant Union organizations and Pirtle maliciously, arbitrarily and spitefully refused and still refuse to certify him as a member in good standing'' in the Union organizations. He asked judgment for $1200 for actual loss of time, and for future loss of time, humiliation, embarrassment and willful actions of defendants the further sum of $25,000.

Both Unions filed special demurrers based on the ground that each was a voluntary association and not suable. Like demurrers were filed by the individual members of the Unions on the same ground. The judgment as to the Unions and individuals recites that ''the plaintiff having filed no amended petition, and saying nothing further with reference to defendants 'Unions' this action is dismissed.'' Appellant is here insisting: (1) Voluntary Associations, such as appellee labor Unions, can be sued in their own names under the laws of Kentucky; (2) the court should have permitted plaintiff to prosecute this suit as a class action; (3) the demurrer of Cross & Son should have been overruled.

We take up point (3) first. In appellant's brief it is stated that the contract was made for his benefit; that he was bound by its terms, and that the Union by proper proceedings could invoke a fine against him, thus removing him from membership, but this was not done and, therefore, he contends he was in good standing. Appellant suggests that it is important to note that part of the contract which required written notice to the employer, under which in order to remove him on the ground that he was not a member, the employer must have had written notice that the employee was no longer a member. The crux of Jackson's complaint (as to employer) is that Cross & Son ''failed to follow the removal procedure provided in the contract.''

We are unable to grasp the argument that Cross & Son breached the contract because the Union failed to

give written notice. The fact is the contract only provided that written notice should be "sufficient notice" to authorize removal. The petition charges that Cross & Son had carried out the contract which the parties had entered into, and this was in full force and effect at all times. It is emphasized that the Unions, through its bargaining agents, had the right to contract for Jackson and Cross & Son, and if they did so contract Cross & Son had no right to question reason or authority. Day v. Louisville & N. R. Co., 295 Ky. 679, 175 S. W. 2d 347.

Applying the rule that a pleading must be most strongly construed against the pleader, it is doubtful if the petition states an actionable cause as against Cross & Son, who, as we read the petition, did only what they had agreed to do, acting upon demand of Pirtle while he was acting within the scope of his authority, as is specifically alleged. The contract provides for no notice to Jackson. Notice could be waived without prejudice to appellant. Notice is but a medium of information, which if conveyed is sufficient notice. Notice "is not a question of diligence but of knowledge of essential facts. If there is such knowledge, acquired in whatever manner and for whatever purpose, of facts which would operate on any rational man of business and make him act with reference to knowledge he has acquired, it is enough." Williston on Contracts, Vol. 2, Sec. 437; Sentry Safety Control Corporation v. Broadway & 4th Avenue Realty Co., 276 Ky. 648, 124 S. W. 2d 1051.

Cross & Son were in a position where they could reasonably act on the demand of the business agent. The contract defined a member in good standing as one who is not under penalty or discipline invoked by the Unions, or who had not paid dues. Cross & Son, when the demand was made, could not assume that Jackson was in good standing, or had paid dues, or that penalty or discipline had not been invoked. They were in a position where they must accede or suffer the possibility of a strike.

We come now to consider appellant's contention that under Kentucky laws "voluntary associations, such as labor unions, can be sued in their own names or as such." On this point reliance is had chiefly on the much

discussed Coronado case, United Mine Workers of America v. Coronado Coal Co., 259 U. S. 344, 42 S. Ct. 570, 66 L. Ed. 975, 27 A. L. R. 762; Adams Express Co. v. Schofield, 111 Ky. 832, 64 S. W. 903, and American Ry. Express Co. v. Asher, 218 Ky. 172, 291 S. W. 21. Appellees say the rule laid down in the Coronado case has been followed in the Federal courts, but has not been followed in our Court. If the reader be inclined, he may find an elaborate discussion of the Coronado case, and the very interesting English case of Taff-Vale R. Co. v. Amalgamated Society &c. A. C. 426, 1 B. R. C. 832, in Warren's "Corporate Advantages Without Incorporation," p. 639. In his work the author says it had been contended that in the Coronado case the court had declined to follow the common law as it had been applied to bodies of men as legal units, and had belittled the importance of inquiring whether the legislature had or had not directed that a particular body of men should be treated as a legal unit. The author did not agree, but a reading of the Taff-Vale and Coronado cases creates doubt as to whether the English Court, or the Supreme Court, adhered to the common law rule, though in United States v. White, 322 U. S. 694, 64 S. Ct. 1248, 88 L. Ed. 1542, 152 A. L. R. 1202, the Supreme Court took the position that the right to sue was based (by implication) on a statute.

The contention that the court should have permitted the suit to be maintained by a class defending for all on the grounds of common interest to all the membership of the Unions, and the entire membership of the Unions be brought in because of common or general interest, and the impracticability of bringing several thousand persons before the court within a reasonable time, is of merit. Section 25 of the Civil Code of Practice is relied on by appellants as authorizing such a procedure.

It is interesting to note some of the conclusions reached by the Justices in the Taff-Vale case. That was an injunction suit it is true, and the question presented was whether the association was suable, and if so could it be brought into court by the representation process. One Justice said: "If the legislature has created a thing which can own property, which can employ servants and which can inflict injury, it (registration stat-

ute) must be taken, I think, to give it the power to be sued in a court of law for injuries * * *.'' Another Justice: ''Then if trade unions are not above the law, the only remaining question is one of form. I have no doubt whatever that a trade union whether registered or unregistered, may be sued in a representative action if the persons selected as defendants be persons who, from their position may be taken fairly to represent the body.'' In Prof. Warren's Work (p. 546) the author points out that in many states, including Kentucky, there are laws in words such as the following: ''When the question is one of common or general interest of many persons, &c'' (following substantially the language of Sec. 25 of our Civil Code of Practice) and asks: ''Does such a statute do more than confirm the doctrine established by the courts of equity on their own motion, or does it apply to proceedings at law as well? In some jurisdictions the statute would seem to be merely conformatory. For example, in Georgia the statute is contained in a chapter entitled Parties to Equitable Proceedings. In many jurisdictions there are as yet no authoritative statements from the courts, but in a majority of the jurisdictions in which such a statute has been passed, we think it was the legislative intent that it should apply at law as well as in equity.'' Citing Loomis v. Brown, 16 Barb., N. Y. 325; Forbes v. City of Jamestown, 212 App. Div. 332, 209 N. Y. S. 99; Platt v. Colvin, 50 Ohio St. 703, 705, 36 N. E. 735; Branson v. Industrial Workers of the World, 30 Nev. 270, 95 P. 354. Prof. Warren's work cites opinions wherein a statute similar to ours has been held to apply to common law actions in cases of conversion of personal property, to recover money from a defaulting treasurer, damages for fraud, and mandamus proceedings, damages to business &c.

Appellant devotes much of his brief to discussion of the doctrine of class representation, a doctrine well recognized by this and other courts, and it can hardly be denied that Sec. 25 of our Civil Code of Practice authorizes a representative, generally interested class, to sue or defend for an unincorporated body, if suable, and we shall now look to that question. In the recent case of Williams v. United Mine Workers of America, 294 Ky. 520, 172 S. W. 2d 202, 204, 149 A. L. R. 505, it ap-

pears that Williams sued the Union for overtime wages and damages. The Union demurred specially on the ground that their association could not be sued in Kentucky "in such a case as this." We stated the common law rule and pointed out that a majority of the states had held such and similar organizations non-suable in their common names, but that Federal courts had held that such organizations could be sued in name "when a statute is involved which deals with the rights * * * of labor unions and their members." We found authority sustaining William's position under Sec. 3(d) of the Fair Labor Act, Title 29 U. S. C. A. sec. 203(d), our state courts having jurisdiction concurrent with Federal courts under that Act; we said: "That unincorporated associations which act as employers may be sued in their own names is a *necessary implication* from the act itself. Otherwise, it would be difficult to enforce the law as to such associations." The question presented here was not involved in that case, and when we turn to cases which it is claimed hold to the general rule, we find the question not common.

In furtherance of the contention that the Unions are not suable, counsel cites to United Mine Workers of America v. Cromer, 159 Ky. 605, 167 S. W. 891, 892; Diamond Block Coal Co. v. United Mine Workers of America, 188 Ky. 477, 222 S. W. 1079; Hotel, Restaurant & Soda Fountain Employees Local Union No. 181 v. Miller, 272 Ky. 466, 114 S. W. 2d 501. A survey of these cases will be of interest. Cromer sued the U. M. W. and one Reid for libel and recovered a verdict; defense urged by U. M. W. was that it was a voluntary association with half a million workers, and was not suable in its common name. In the course of the opinion the writer said (159 Ky. 605, 167 S. W. 892): "As we have in this state no statute authorizing a suit against a voluntary association as such, it is *doubtless* true that such an association is not suable *merely* in the name of the association," but it is noted that we dismissed the question on the fact that there was no objection to the suit, by special demurrer or plea in abatement, and we affirmed Cromer's judgment. The Court made no mention of Civil Code of Practice, sec. 25, or other laws to be noted.

In the Diamond Block case the appellant, a Vir-

ginia corporation operating in Kentucky, sought to enjoin the U. M. W. and 17 named individuals "and all persons working by, through, or under them * * * from proceeding to erect, construct or build * * * near the coal plant," and certain of the defendants claiming to have connection with U. M. W. (188 Ky. 477, 222 S. W. 1079) from interfering with the miners employed at plaintiff's mine. The U. M. W. plead that it was a voluntary association, and since there was no statute authorizing it to be sued, it could not be subjected to suit. The court granted temporary injunctive relief. This court dissolved the temporary injunction. This case was decided on merits, the rights of labor to organize and act collectively, as long as they do not trespass on the rights of others. The writer of the opinion did say at its close: "It is a general rule that voluntary associations, such as the United Mine Workers of America, have neither power to sue nor to be sued in the association name, except in special cases," citing authorities, among them Nichols v. Bardstown Lodge No. 179, 105 Ky. 168, 48 S. W. 426, which did not consider or decide the question as to whether a voluntary association could sue or be sued. In the Diamond Block case the question of suability or power to sue was not considered or decided, since the opinion, after merely stating the rule, reads: "But, as the injunction in this case must be and is dissolved on other grounds, it is not necessary here to further consider the question."

In Hotel, Restaurant & Soda Fountain Employees Local Union No. 181 v. Miller, 272 Ky. 466, 114 S. W. 2d 501, Miller enjoined a number of the members of the Union (an affiliate of A. F. of L.) from picketing his restaurant. The court granted injunction. The Union claimed that it was an unincorporated association not suable, and properly raised the question, but we found that it had entered its appearance to the suit by its motion to have a modification of the order of restraint. The question of suability was not before the courts; the case was decided on merits. The foregoing are all the Kentucky cases cited by appellee, though there are cited foreign cases which it is claimed uphold the principle contended for, and which, together with many cited texts, we do not find necessary to digest or discuss.

It is noted that in the Georgia Code, mentioned in

the Warren work, the section similar to our Section 25, was contained in a chapter entitled "Parties in Equitable Proceedings." Ga. Code, sec. 37-1001 et seq. In our Civil Code of Practice the chapter is titled "Parties to Actions Generally." Tracing it back to the Code of 1854, we find it titled "Parties to Civil Actions," indicating impliedly that it was intended to relate to all civil actions. In fact we find cases where it has been applied in common law actions. Commonwealth v. Scott, 112 Ky. 252, 65 S. W. 596, 55 L. R. A. 597; Gorley v. City of Louisville, 65 S. W. 844, 23 Ky. Law Rep. 1782; Sparks v. Robinson, 115 Ky. 453, 74 S. W. 176; and numerous cases where taxes illegally collected were sought to be recovered. In the case of Batman, Jr., etc., v. Louisville Gas & Electric Co., 187 Ky. 659, 220 S. W. 318, 319, where the only relief asked was money judgments on behalf of Batman and a common class, the court construing Sec. 25, Civil Code of Practice, said: "As a matter of fact, this section of the Code never confers jurisdiction, but only permits one or more of the proper parties to an action in any court and of which the court has jurisdiction, to sue or defend for all in two states of cases: (1) Where the subject-matter of the litigation is of a common or general interest to many persons." The question of whether there be here a common or general interest is not involved or in issue on special demurrer. It appears to us that the provisions of Sec. 25, Civil Code of Practice apply to common law actions as well as to suits in equity. It is true that in a majority of our opinions it has been applied in equity cases, though a survey fails to disclose the fact that it has been held to apply only in such cases.

We find in the case of American Railway Express Co. v. Asher, 218 Ky. 172, 291 S. W. 21, 23, a ruling of this court which upholds the principle that our statutes justify or authorize a suit against an unincorporated association. In that case Asher had filed a common law action against the Adams Express Company and obtained a money judgment. The American had taken over the Adams in the meantime, and Asher then sued both companies, asking personal judgment for $350. One of the defenses was that the Adams Company (original judgment debtor) was a voluntary association, and that a joint stock association organized under the com-

2

mon law right could not, in absence of a statute, be sub-jected to suit.

Judge Logan, the writer of that opinion, pointed out that Sec. 208 of our Constitution provided that: "The word corporation as used in this Constitution shall embrace joint-stock companies and associations," and that Sec. 457, KS, provided that the words " 'corporation,' 'company,' may be construed as including any corporation, company, person, persons, partnership, joint stock company or association." KRS 446.010 now reads: " 'Corporation' may extend and be applied to any corporation, company, partnership, joint stock company or association."

The opinion in the American case reads: "We have authority, therefore, in Kentucky both in the Constitution and the Statutes for declaring a joint-stock company such as the Adams Express Company a corporation, and this court has held that it is a corporation within the meaning of the Constitution and the statute" (citing the former Adams Express Company case and the applicable case of International Harvester Co. v. Commonwealth, 147 Ky. 655, 145 S. W. 393). We have had our attention called to Newman's Pleading and Practice, Sec. 156. It is there stated that if an association of persons be not incorporated or authorized by statute to be sued, no action can be brought against them by their aggregate or assumed name, but they must be proceeded against as individuals * * *." We have just shown by reference to the Kentucky Constitution and Statute that there is authority to sue such a concern as it is treated as a corporation.

In the Coronado case the Supreme Court, according to some authorities, found authority to hold the Union by class representation under Sec. 8 of the Sherman Act, 26 Stats. 209, 15 U. S. C. A. sec. 7. That section provides that the words "person" or "persons" should be deemed to include corporations and associations existing under law. The court concluded that the word "association" included "unincorporated associations" such as defendants are shown to be.

In Brown v. United States, 276 U. S. 134, 48 S. Ct. 288, 289, 72 L. Ed. 500, 501, the Supreme Court stated the general rule, but said: "Many of the states have

496

adopted statutes expressly providing that such associations may be sued. But an express provision is not indispensable. Such a suit may be maintained in virtue of a necessary implication arising from statutory provisions although the statute does not in terms so provide.''

It seems to us that under Sec. 25, Civil Code of Practice, and the Constitution and statutes quoted, fortified by the reasoning in the Asher-Express case and Coronado case, we must conclude that the Court of first instance was in error in sustaining the special demurrer to Jackson's petition and should have granted plaintiff's request to have the representative members and authorized business agent defend for the Unions and all members. This conclusion leads us to affirm the judgment in sustaining the general demurrer of Cross & Son, but otherwise reversing, and remanding for proceedings consistent herewith.

Affirmed in part; reversed in part.