## INTERNATIONAL UNION OF OPERATING ENGINEERS et al. v. BRYAN.

Court of Appeals of Kentucky.

Feb. 20, 1953.

Raymond C. Schultz, Paducah, Eugene B. Cochran and Hubert T. Willis, Louisville, Goheen, Schultz & Shelbourne, Paducah, Middleton, Seelbach, Wolford, Willis & Cochran, Louisville, of counsel, for petitioners.

Thomas J. Marshall, Jr., and James G. Wheeler, Paducah, for respondent.

DUNCAN, Justice.

By this original action, the petitioners, International Union of Operating Engineers and Arthur Watkins, seek to prohibit respondent, Holland G. Bryan, as Judge of the McCracken Circuit Court, from enforcing an order of that court entered on December 3, 1952, adjudging petitioners to be in contempt of court and directing their appearance before respondent for the purpose of fixing punishment.

The proceedings arose from a suit filed in the McCracken Circuit Court by R. M. Wilcox, and others, all of whom are alleged to be members of Local 181, International Union of Operating Engineers, against International Union of Operating Engineers and certain individual members of that union, including the petitioner, Watkins. The suit seeks to recover sums in excess of $3,000,000 as damages which plaintiffs are alleged to have sustained by reason of certain unlawful acts of defendants. We purposely refrain from commenting at length on the allegations of the petition or considering here any of the facts which are charged.

On October 21, 1952, the plaintiffs in that action entered their motion for a subpoena duces tecum, and on October 30, after notice to the defendants, the motion was sustained. On the same date, an order was entered directing the petitioner, Arthur Watkins, individually and in his capacity as International Business Representative of petitioner International Union of Operating Engineers, to appear at the court house in Paducah, Kentucky, on November 14, 1952, to testify as on cross-examination, and to bring and produce at that time certain books and records relating to Local 181, International Union of Operating Engineers. The subpoena duces tecum was served on Watkins, individually and as representative of the union.

Petitioners chose to ignore the order and subpoena and neither appeared nor produced the records at the time commanded. The plaintiffs, thereupon moved for a rule against petitioners to show cause why they should not be punished for contempt on account of their failure to comply with the order of the court. Hearing on the motion was delayed from time to time at the instance of petitioners, and finally on December 3, an order was entered adjudging Watkins and the union guilty of contempt. Sentence on the contempt was suspended until January 5, 1953, and the order provided that Watkins might purge himself of the contempt by appearing and producing the records in obedience to the earlier order of the court. Further proceedings have been stayed by a temporary Writ of Prohibition issued by this Court.

Demurrers, motions to strike, interventions, objections, and other motions and countermotions, all relating to procedural matters, have been filed in the proceeding in this Court. A disposition of the several motions is not necessary to a determination of the merits, and we perceive no good reason to extend the opinion by a discussion or specific ruling on any of them.

The use of the Writ of Prohibition over inferior tribunals has been regarded as one of the inherent powers conferred on this Court by Section 110 of our State Constitution. It has been many times recognized that it is an extraordinary power which is to be exercised sparingly and only for the purpose of preventing a grave injustice, for the prevention of, or relief from, which there is no adequate remedy. It has become firmly established by judicial construction that the writ will issue only where the inferior court is acting without jurisdiction, or is acting erroneously within its jurisdiction, in such a manner that

great and irreparable injury will result to one who is without an adequate remedy by appeal. Admittedly, the respondent is acting within his jurisdiction and we have only to determine whether or not there is a concurrence of the remaining three requisites for the writ.

First, it is insisted by petitioners that the subpoena and order did not command the union as such to appear and produce its records. The distinction between an unincorporated labor union and a corporation is apparent. Although regarded as a legal entity, an unincorporated union is a voluntary association which is not distinct from its individual members, as is a corporation from its stockholders. In Jackson v. International Union of Operating Engineers, 307 Ky. 485, 211 S.W.2d 138, which was followed in International Union of Operating Engineers v. J. A. Jones Const. Co., Ky., 240 S.W.2d 49, it was held that the same union appearing here as one of the petitioners could be brought before the court under the provisions of Section 25, Civil Code of Practice, by service on members who because of their position could be deemed to represent the class. The petitioner, Arthur Watkins, is International Business Representative of the union, and there could be no doubt that his position is such that he might properly be treated as a representative of the union.

In Covington Trust Company of Covington v. Owens, 278 Ky. 695, 129 S.W.2d 186, we held that where a defendant in a class suit is permitted or directed to defend for other codefendants similarly situated the other defendants or members of the class are before the court and bound by its judgment although they may be nonresidents and never served with process. It is true in that case an order had been entered by the court appointing representative defendants to defend for all others in the same class. However, we consider the order and subpoena here as directing the petitioner, Watkins, at least insofar as a compliance with the order is concerned, to represent the union and its defendant members.

Here, the president and the secretary, having custody of the records, were nonresidents of this State. The only way by which the court could have compelled production of the records was through an agent or representative member of the union. We have no trouble, therefore, in concluding that the subpoena addressed to the petitioner, Watkins, individually and in his capacity as International Business Representative of the union, was an order directed to the union as such, which it was required to obey.

Petitioners insist that the subpoena directed to Watkins commanding production of the records commands an act which is beyond his power to perform since he is not the officer having custody of the records and possesses neither the power nor authority to produce them. The annotation appearing in 23 A.L.R.2d, p. 862, is cited as authority for the assertion that the subpoena should be directed to the officer having custody of the documents to be produced. The annotation merely indicates that the designation of the particular officer having custody of the documents required is the most desirable form. None of the collected cases indicate that an order or subpoena directed to any other officer or representative would be ineffective. In this case, as we heretofore have indicated, there was no opportunity for choice between the agent having custody of the records and the petitioner, Watkins, since both the records and the officer in whose custody they were kept were beyond the jurisdiction of the court.

It is next insisted that Watkins was not compelled to respond to the subpoena because it was served upon him in Henderson, Kentucky, and the legal fees and mileage were not tendered in advance. Section 534, Civil Code of Practice, provides that a person shall not be compelled to attend for examination upon the trial of a civil action if he resides more than twenty miles from the place of the trial, nor to attend to give his deposition out of the county in which he resides or in which the subpoena is served, unless compelled under Section 556, Civil Code of Practice. Section 536, Civil Code of Practice, pro-

vides that when a witness is brought before a court for disobedience of a subpoena and it is shown that the legal fees for travel and one day's attendance were paid or tendered to him when the subpoena was served, and that he failed to attend without reasonable cause, the court may order him to pay the party on whose behalf he was summoned the cost occasioned by the disobedience. Section 606(8) authorizes a party to cross-examine an adverse party either orally or by deposition.

There has been no opinion of this Court directly deciding the question as to whether or not the taking of the deposition of an adverse party is controlled by Sections 534 and 536, Civil Code of Practice. The case of Johnson v. Langley, 247 Ky. 387, 57 S.W.2d 21, 24, is strongly persuasive that these sections relate only to witnesses who are not examined under Section 606(8) as adverse parties. There, it was held that a deposition taken under the latter section was not controlled by Section 554, Civil Code of Practice, the Court stating:

"The Code makes a distinction between taking the deposition of a witness and the examination of a party. The right to take the deposition of a witness before trial depends upon certain conditions specified in the Code, and the right is not absolute, but the right to take the deposition of an adverse party, as if under cross-examination, is absolute under section 606, subsec. 8. The right to examine an adverse party is not dependent upon the existence of the conditions named in section 554, or their probable existence at the time of the trial, and there is no restriction in the Code on the use of his deposition on the trial if he is a competent witness, though he may be present."

It is our conclusion that Sections 534 and 536, Civil Code of Practice, do not excuse compliance with the subpoena.

Petitioners' pleadings and exhibits here indicate that the records ordered to be produced by the subpoena consist of some 400,000 separate documents, occupying a portion of five offices and two storerooms in Evansville, Indiana. It is insisted that

the cost of transportation of the records from Evansville to Paducah may amount to several thousand dollars and that the need for constant reference to the records is such that the union cannot carry on the daily activities of its office during their absence.

The matter of the issuance of the subpoena in the first instance was addressed to the sound discretion of the court. Union Trust Co. v. Garnett, 254 Ky. 573, 72 S.W.2d 27; Breitenstein v. Bradas' Ex'r, 290 Ky. 43, 160 S.W.2d 323. The expense of transportation and inconvenience occasioned by the absence of the records was a matter for the consideration of the lower court, and our review is limited to determining whether or not there has been a clear abuse of its discretion. We conclude there has not. We may also observe that the expense and inconvenience of complying with the subpoena do not in our opinion amount to such great and irreparable injury as would justify a Writ of Prohibition even if we were inclined to the view that there had been a clear abuse of discretion by the lower court.

Petitioners object particularly to the introduction of what is referred to as the "master file" containing the names, addresses, and other data concerning all of its members. It is argued that if plaintiffs are permitted to copy the names of its members these copies could be used to raid the union and proselyte its members. This contention ascribes to the records an aura of secrecy which we do not think they possess. The books of corporations, both by statute and common law, are made available to their stockholders, and we know of no reason why the records of a labor union should be regarded as confidential in nature and inviolate from its members.

Petitioners rely upon the case of Equitable Life Assur. Soc. v. Hardin, 166 Ky. 51, 178 S.W. 1155. In that case, a plaintiff who held a $10,000 participating policy was seeking to recover from the insurance company approximately $2,000,000, alleged to be his share of the profits under the participating provisions of his policy. The subpoena required the production at

Stanford, Kentucky, of records relating to over 550,000 policyholders in forty States. We do not think there is any reasonable basis for comparison between the records of the Equitable Life Assurance Society and those of Local 181, International Union of Operating Engineers. The subpoena in the Hardin case directed the transportation from New York to Stanford, Kentucky, of practically all of the records of a major insurance company to permit inspection by one of its 550,000 policyholders. The distinction, although one of degree, is so apparent that we do not consider that case as supporting the union's position.

Finally, it is insisted that compliance with the order and subpoena is impossible because petitioners are enjoined from doing so. The record indicates that on November 25, 1952, Joe Pirtle, whom we observe from the opinion in International Union of Operating Engineers v. J. A. Jones Const. Co., supra, is an International Business Representative of the union, joined by certain other members, instituted an action in the Probate Court of Vandenburgh County, Indiana, against V. L. Kelly and other representatives of the union, seeking to enjoin the production of the documents referred to in the subpoena. On the same day, a temporary restraining order was issued, and one week later, on December 2, a permanent injunction was granted. All of these proceedings occurred after the entry of the order by the McCracken Circuit Court.

We are not impressed with petitioners' good faith in asserting their obligation to comply with the Indiana judgment while they have been perfectly willing to ignore the orders of the Kentucky Court. Their sudden respect for courts has been too recently acquired to indicate that the Indiana action is anything more than a subterfuge to evade compliance with the orders of the McCracken Circuit Court. We think it proper to observe here that counsel appearing for petitioners in this action did not act as counsel or participate in the injunction action in the Indiana Court. What has been said about that proceeding

is not intended as a reflection upon counsel who appear for petitioners in this Court.

We have no right to suggest a noncompliance with the Indiana judgment, and we are not concerned with its effect. We are dealing here with the right of the respondent to punish the contemptuous conduct of the petitioners in failing to comply with an order regularly made. We have no hesitancy in concluding on the record here that respondent may properly proceed under his order adjudging petitioners in contempt.

The temporary Writ of Prohibition heretofore issued is discharged, and the application for a permanent writ is denied.