## Sentry Safety Control Corporation v. Broadway & 4th Avenue Realty Co.

Feb. 3, 1939.

ABRAHAM & GUTHERIE for appellant.

MILLARD COX for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

Appellee in 1930 owned the Brown Theatre in Louisville, and was then engaged in the business of showing motion pictures therein. Appellant, owner of a patented safety device used in connection with picture projection, entered into a written contract on April 1, 1933, with appellee, for the rental of two of such devices at $2.50 per week each. So much of the contract as is in controversy, follows:

"(a) No charge to be made for any period of four weeks or longer during which motion pictures are not projected.

"(4) Either party may terminate this lease at the expiration of the term hereby created, by giving to the other party, sixty days in advance of such expiration, written intention to do so, but in default of such notice this lease, with all conditions and covenants hereof, shall continue for an additional term, and so on from term to term.

"(5) This lease shall not be assigned by either party without the written acceptance of the assignee and the written consent of the lessors, provided, however, that if the lessee sells or disposes of his interest in any theatre listed in the attached schedule he may assign this lease (insofar as it pertains to such theatre) to the purchaser of such interest without the written consent of lessor, and such assignment shall become effective upon the written acceptance thereof by the assignee; no assignment of this lease, however, shall relieve lessee of liability hereunder, unless lessor consents in writing to release lessee from such liability."

The appellee operated the picture show, using the devices, from April, 1930, to April 1933, at which time it leased the premises and all equipment to J. Schwarz, who operated the picture house, using the appliances, until July, 1936, when he defaulted in payment of rent to his landlord. After April, 1933, he made no pay-

ments for the use of the device until about a year after his taking over the picture show and up to the date when he ceased to operate. The original lessee of the devices made no payment therefor after Schwarz took over the place.

On January 8, 1937, appellant sued and by its petition set out the contract, stressing the portions thereof. which we have quoted above. The original lease was for a term of five years from April 1, 1930; its first expiration date April, 1935. It is alleged that it had not been given notice of appellee's purpose or intention to cancel, so that there was automatic extension of the lease for another term of five years, on like terms.

Appellant treated the expiration of the second term as of April 1, 1940, and alleged that during the original and renewed term lessee had made certain payments, the last being on May 25, 1936. Its account was exemplified as follows: Rent from April 1, 1930, to April 1, 1935, $1,300. Rent from April 1, 1935, to 1940, $1,300. Less credits and payments, $1,386.06. Balance due to maturity, $1,213.94, for which sum it sought recovery because of the alleged violation of the terms of the contract.

Appellee answered, denying the allegations of the petition, and in another paragraph admitted that it rented and used the safety devices from April 1, 1930, to March 31, 1933, and paid all rentals due by it under the lease. It pleads that on the last above date it ceased to operate, control or manage the picture house, terminating all interest therein, save ownership of the property. That under the terms of said lease with plaintiff it was not obligated to pay rent on the devices during any period after it ceased to operate, and that it did not operate from April 1, 1933, to September 25, 1936. It also asserted that on April 1, 1933, the control and operation of the picture house was taken over by Schwarz, under a lease for a five year period; that under its terms Schwarz assumed and agreed to perform all then existing contracts in connection with the operation of the picture house, "including the lease of said safety devices," and from date of lease Schwarz was in possession of the house as lessee, with all fixtures, furniture and equipment used in connection with picture showing, including safety devices.

It is further stated that appellant was notified by

appellee that Schwarz had assumed responsibility under said lease, and it accepted him as assignee of this lease; that Schwarz had possession more than sixty days in advance of the first expiration date, as assignee of the contract with appellant, and having terminated its interest and having assigned said lease to Schwarz it did not attempt to cancel said lease, because no longer bound thereon, and having no interest therein.

Schwarz abandoned the premises about July 10, 1936, and no pictures were shown until September 25, 1936, when appellee resumed operation, and finding the two devices there, requested the lessor to remove them, because they were not currently used by picture houses, and were regarded as useless by the operator of appellee's picture equipment, and not having been removed it shipped them to appellant and they were received by it on November 25, 1936.

A reply controverted the answer, and it was agreed by parties that the case might be, as it was, heard by the court without the intervention of a jury. Proof was heard orally and by deposition, and the court in a comprehensive opinion (made part of the record) separated findings of fact and conclusions of law, which led to the entry of a judgment in defendant's favor. Motion for a new trial was overruled and appeal granted.

There was little testimony, and the only part which seems of pertinence to the issue was directed as to whether or not, during the lease period, there was notice to the appellant that appellee had ceased to operate and had turned over the theatre and equipment, including the safety devices, to Schwarz.

The general manager of the appellant testified, introducing the lease and company's records showing payments. This officer says that neither sixty days before the termination of the first term of the lease, nor at any other time did the lessor receive notice of lessee's intention to terminate the lease, nor did the lessor by notice evidence such intention. He takes the position that because of the failure of the sixty day notice before the end of the first term, the lease was automatically extended until April 2, 1940, and that lessor received no notice of transfer of the lease, and did not at any time consent to assignment.

This witness admits that the appellant's local attor-

ney sent its account to a Louisville attorney for collection, and it was informed by the latter, through its home attorney, that appellee had ceased operation of the theatre, and had turned it over to the Mid-West Theatres Incorporated, which was then operating it. Also that the Mid-West concern had agreed to take over the contract, but that the Mid-West informed the lessor that it had not so agreed. No request was made of it to consent to any such agreement. This witness did not know whether the checks received which went to pay for the use of the safety devices were appellee's checks or not. The account was carried in the name of the Brown Theatre, and checks received were credited to that account.

E. R. Clark, secretary of the appellee, admitted the making of the original contract, but says that on April 1, 1933, "We terminated our interest in the operation and management of the theatre by leasing it to Schwarz." He also states that at that time the original lessee turned over control and management to Schwarz, as well as all furniture, fixtures, and equipment, including safety devices, the inventory to him contained an item, "two Sentry Safety controls and circuit breaker." From April 1, 1933, to his abandonment of the theatre July 10, 1936, Schwarz had all the equipment, including devices, and the appellee had nothing to do with it until September, 1936.

On February 21, 1934, appellee received a letter from appellant's Louisville attorney, stating that he had a claim for back pay on the devices, amounting to $146.25. In reply appellee expressed the view that something "is wrong about this, as our records show we do not owe these people anything at all."

In reply to this, on March 7, 1934, the Louisville attorney, by letter, advised appellee that:

"This claim is for the rental of two Sentry Safety controls which were installed in ___d-way Theatre April 1, 1930, for a period of ___ars under lease with the Broadway Realty Company. Rental was paid regularly up to April 1, 1933. From that date to December 31, 1933, there is an accrued rental due of $146.25, and in addition there is a liability for a further period of approximately two years."

In reply to this appellee wrote in March, 1934:

"On April 1, we leased the theatre to the Brown Theatre Corporation, and as a part of the agreement the new corporation assumed these contracts. I am today writing Mr. Jack Schwarz, manager of the Brown Theatre corporation, asking him to get in touch with you about this matter."

This letter was written about a year before the five year term of the original lease had expired.

The court found the facts to be, substantially, that lessee from date of lease to April 1, 1933, had paid rent in full; that the contract between appellee and Schwarz did not specifically include an assignment of the lease to Schwarz, "nevertheless Schwarz received possession of, and gave his receipt for the two Sentry devices." The court further found and stated facts not in dispute, and stated in substance, in his opinion:

"Lessor, so far as the record shows, had no knowledge then of the change in control of the theatre. Schwarz, assuming control, had paid lessor no rent, when on February 21, lessor's attorney wrote to lessee."

The court then sets out the correspondence which we have above referred to, making this suggestion: "The reference to the Brown Theatre corporation was erroneous. Lessees' tenant was Schwarz."

However, it is shown that Schwarz was the president of the Brown Theatre Corporation. The court found that original lessee made no payments after Schwarz took control, and therefore deduces that Schwarz made them, (they being made from June 4, 1934, to May 23, 1936) and lessor accepted same from him. After reciting further facts, and giving them close analysis, the court said that the letters exhibited did not evidence any intention to hold appellee to the contract after the expiration of the initial term. The court further said:

"With this background, lessee's letter has something more than its obvious face value. Let it be conceded that lessee's thought of termination was erroneous. Let it be conceded that, in writing that letter, lessee had not been actively thinking of the lease's provision for termination. Even so, the letter denies lessee's liability since Schwarz took over

the theatre, and, as to the future, very distinctly illustrates a state of mind wholly inconsistent with acceptance of continued liability. Notice is a medium of information; if information is conveyed, the medium is notice, regardless of the name given it. Intention is a determinative attitude or state of mind. Considering all the facts and their implication, I reach the following conclusions:

"Law.

"I. Lessee's letter, although embodying an erroneous assumption as to lessee's liability until April 1, 1935, gave lessor's information as to lessee's determinative mental attitude, that is that it denied all liability under the lease after it had let its theatre to Schwarz and had itself ceased operations.

"II. This was equivalent, in substance, though not in conventional, technical form, to notice of intention to terminate the lease, and substantially satisfied, both as to the time and fact, the prescription of Section 4 of the lease.

"III. While lessor was under no general duty to instruct lessee as to the terms of the lease, with the information as to lessee's belief that its responsibility was at an end, lessor was not justified in silently allowing the time for formal termination to elapse, and then to claim that, because lessee had not given conventional notice, the lease continues in force until April 1, 1940, carrying lessee's liability to that date.

"IV. As far as lessee is concerned, the lease terminated as of April 1, 1935, and lessee's liability ceased as of that date.

"V. The rent having been paid by lessee to April 1, 1933, and by Schwarz from that date to April 1, 1935, lessee's obligation being in the nature of suretyship for Schwarz during the latter period, judgment will go for defendant lessee."

While finding no fault with the court's conclusions, or the reasoning in reaching same, we feel constrained to say that as we review the record, he might well have concluded that appellant under all the facts and circumstances, by its actions, or non-action, waived the restric-

tions in its lease with regard to written notice by lessee of transfer of the lease; the written acceptance of transfer or assignment by its lessee; or a writing by lessor releasing original lessee from liability.

An observation of the account in detail, filed with the deposition of Marks, shows that the original lessee had been meticulous in meeting its rentals; they were paid in very precise, regular installments, apparently each month. This continued until the rental due for April, 1933. Afterwards there were no payments, nor indeed any demand for payment, until the latter of June, 1934, when thereafter the account is credited with $277.50; in November 1935 with $97.50, and in December, of the same year, with $162.50. It is shown that none of these were made by appellee, and the court deduced, from all the facts and circumstances, that there was such "contact" between Schwarz and appellant that it must have known that they were paid by him, and not lessee. We agree in that conclusion, since it must be assumed that appellant company was composed of men of ordinary business intelligence.

Appellant did show some interest, since upon information it inquired of the Mid-West Company if it had "agreed to take over the contract" with appellant, which concern denied they had agreed to do so. The Louisville attorney's letter had carried the information that the theatre had been taken over by the Brown Theatre, and that Schwarz was its president.

It may be observed that the restrictions and limitations contained in the contract (as to transfer) and upon which appellant is relying to hold appellee liable, are for the sole benefit of the lessor, and it is thus argued in appellant's brief. This being true, we know of no principle of law which would prevent appellant from waiving the requirements of written notice in "conventional technical form." From a reading of the cross-examination of Mr. Clark, this is stressed as being the chief failure.

When we come to analyze the contract, the testimony, circumstances of the entire transaction, we cannot escape the conclusion that appellant waived the restrictive terms and conditions of its contract. The principle applicable here is laid down in Williston on Contracts, Vol. 2, Section 437, under the title "What Amounts to Notice:"

656

"It is not a question of diligence, but of knowledge of essential facts. If there is such knowledge, acquired in whatever manner and for whatever purpose, of facts which would operate on the mind of any rational man of business, and make him act with reference to knowledge he has so acquired, it is enough. Even though there is no actual knowledge of an assignment, if there is knowledge of such facts as would put a reasonable man upon inquiry, and as would indicate heedless disregard of other's rights, if no attention were paid to them, the same is as if actual notice had been given."

Having thus expressed our views of the controversy before us, we find no difficulty in adopting the conclusion reached by the lower court.

Judgment affirmed.