**SMITH v. PACIFIC MUT. LIFE INS. CO.**

No. 11313.

United States Court of Appeals
Sixth Circuit.

Nov. 27, 1951.

C. Maxwell Brown, Lawrence S. Grauman, Louisville, Ky., C. Maxwell Brown, Lawrence S. Grauman, Louisville, Ky., on brief for appellant.

Thomas W. Bullitt, Louisville, Ky., Wm. Marshall Bullitt, R. Lee Blackwell, and Thomas W. Bullitt, all of Louisville, Ky., on brief; Bullitt, Dawson & Tarrant, Louisville, Ky., of counsel for appellee.

Before HICKS, Chief Judge, and SIMONS and MILLER, Circuit Judges.

MILLER, Circuit Judge.

In an action on a life insurance policy filed by the appellant, Josephine Spalding Smith, the District Judge directed a verdict for the defendant-appellee, Pacific Mutual Life Insurance Company, upon which judgment was entered. This appeal followed.

On May 19, 1943, appellee issued to John B. Smith, the insured, its policy of life insurance in the total face amount of $7,272.00. His wife, the appellant, was named the beneficiary. The annual premium of $130.40 was due on the 19th day of May of each year, with the right in the insured to pay semi-annual premiums in the amount of $67.56. On May 19, 1947, the insured failed to pay the premium then due, but the default was remedied by a policy loan to the insured which was secured by a pledge of the policy's cash surrender value. On May 19, 1948, the insured again failed to pay the premium. After giving effect to the reinstatement in which he answered the four questions listed. Question No. 1—"Are you now in good health" was answered "Yes." Question No. 2—"Have you during the past year had any injury, sickness or ailment of any kind or consulted a physician or any other practitioner. (If so give full particulars,)" was answered "Have been under the care of Dr. Morris Thompson, Heyburn Building, Louisville, Ky." Questions 3 and 4 were with reference to other applications for insurance. He mailed the application, together with his check for a semi-annual premium in the amount of $67.56 to the appellee's Louisville office. That office was closed on Saturday July 3rd and also on Monday July 5th, being a postponed holiday. Due to the accumulation of mail over the holiday week-end, the application and check did not receive attention until Wednesday July 7th, at which time the check was deposited in bank in the regular checking account of the Company, and the amount thereof entered on the cash sheet and the collection report. The collection report, with a memorandum showing the character of the collection, together with the application for reinstatement and a copy of the local office's "Temporary Acknowledgment," referred to hereafter, was sent to the Home Office in Los Angeles, California. Authority to approve or disapprove the application for reinstatement was exclusively in the Home Office.

Following the deposit of the check, the General Agent of the Louisville Office and the individual agent who wrote the policy were each credited with their respective shares of the premium payment. These were described by witnesses as temporary credits until the Home Office determined how it wanted the entry completed, subject to reverse entries later which would cancel the credits, although the entries themselves did not indicate at the time that they were conditional. The local office filled out its Form No. 16–N, marked in its upper lefthand corner policy loan and interest, the policy then had a cash surrender value of $1.08, which under the Non-Forfeiture Clause of the policy, and upon failure of the insured to make any other election, was properly applied to paid-up term insurance, which extended the policy to May 29, 1948, at which time the policy expired.

Following a short illness in a Louisville hospital, from which he was discharged on June 5, 1948, the insured and his wife took a short vacation trip, returning to Louisville on June 24, 1948. In the meantime,

the 31 days grace period for the payment of the premium had expired on June 19, 1948. The policy contained a provision for reinstatement, which read as follows: "Reinstatement. After any default in payment of premium this Policy, if not surrendered to the Company, may be reinstated at any time within five years from the date of such default, on written application by the Insured to the Home Office of the Company and the payment of overdue premiums to date of reinstatement with interest thereon at 5% per annum, provided the Company shall be satisfied as to the insurability of the Insured at the time of such application. The Company shall have the right to require the Insured to submit evidence of insurability. Any indebtedness on this Policy to the Company at the time of default in payment of premium, with interest, will be reinstated if not repaid."

On June 21, 1948, appellee sent to the insured an application for reinstatement in which it notified him of the lapse of his policy and his right to reinstatement, with respect to which it advised—"If you will complete the form on the other side answering all the questions, date, sign and return to us with your remittance of $138.92 within the next ten days, the Company will be glad to consider your application." On July 2, 1948, the insured filled out and executed the application for a "Temporary Acknowledgment," which showed the amount of the check received, and as being "Premium Subject to Reinstatement," and which carried the wording "Acknowledging for Account as indicated. Subject to Applicable Acceptance Conditions on Reverse Side Hereof." In the Acceptance Conditions listed on the reverse side, condition No. 3 read as follows: "Premium Subject to Reinstatement: This deposit held for the convenience of and subject to the order of depositor while the question of reinstatement of the policy numbered on the face hereof is pending. If reinstatement approved, official receipt will follow. If policy is not reinstated, this deposit or its equivalent in value will be returned to and accepted by the depositor."

This was placed in a window-type envelope with the return address of the Louisville agency and put through the postage meter machine in the Company's regular course of business. The envelope was postmarked July 8, 1948, and was duly deposited in the mail. It was found unopened on the insured's desk, following his death on August 10, 1948.

The application for reinstatement was received by the Home Office on July 9, 1948 and referred to a supervisor of the Reinstatement Division. Due to the answer to question No. 2, it was then forwarded to the Underwriting Department for consideration. On July 13, 1948, the Home Office wrote the Louisville office as follows: "Before taking action on the reinstatement, we would like a statement from Dr. Thompson. Please, therefore, get in touch with the Insured and have him authorize the doctor to give us this statement. We are writing the doctor today."

The insured gave the necessary permission and on July 16th Dr. Thompson mailed his report to the Home Office, where it was received on July 21st. Because of a complex medical problem involved, the file was referred to the Underwriting Department on July 26th. On July 28, the Underwriting Department referred the application for reinstatement to the Company's medical director. On the same day, it was determined that a medical examination of the insured would be necessary before passing upon the application. On July 29, the Home Office wrote the Louisville Office to request the insured to have such a medical examination by one of the Company's medical examiners. On July 31, the Louisville Office arranged with Dr. C. A. Boone of Louisville, Kentucky, for an examination of the insured on August 3rd at 12:45 p. m. and Agent Montgomery, who had written the policy notified the insured of the necessity for such an examination and of the appointment, which was agreeable to the insured. The insured failed to keep the appointment with Dr. Boone. Agent Montgomery thereafter attempted to arrange for another appointment with Dr. Boone. However, the insured died suddenly of a heart attack on August 10th before being examined.

On August 13th, following notice of the insured's death, the Home Office, in accordance with condition No. 3 of the Acceptance Conditions on the reverse side of the Temporary Acknowledgment, mailed the Company's check to the order of the appellant in the amount of $67.56 to the Louisville Office for delivery to her as a refund. The Company tendered this check to the appellant who refused to accept it.

The present action on the policy followed. At the close of all the evidence, which showed the foregoing facts, the District Judge overruled appellant's motion for a directed verdict and sustained a similar motion by the appellee. Verdict and judgment for the appellee followed.

 Appellant contends that the appellee could not decree a forfeiture of the insurance policy in question; that the reinstatement provision of the contract was an integral part of the contract obligation of which the insured had a right to avail himself after the default in the premium payment; that the act of reinstatement did not constitute a new contract nor did the application for reinstatement constitute an offer which the appellee could accept or reject at its pleasure; and that the reinstatement occurred automatically and immediately upon performance by the insured of the conditions precedent. We believe such general statements to be well established principles of insurance law. But we find no forfeiture in the present case. Upon the failure of the insured to pay the annual premiums in May, 1947 and 1948 he received the full cash surrender value of his policy through a policy loan, which was not repaid, and a small amount of extended insurance. The Company recognized his contractural right to reinstate the policy, and in fact called it to his attention. We agree that reinstatement would occur automatically *upon performance by the insured of the conditions precedent.* The question presented is whether the insured performed the conditions precedent. Appellant contends that the insured had done all that was required of him by the terms of the policy. But clearly such was not the fact. The reinstatement provision not only required the payment of the overdue pre-

mium, but also provided that the Company should be satisfied as to the insurability of the insured at the time of his application, and gave the Company the right to require the insured to submit evidence of insurability. The Company was not satisfied as to the insurability of the insured; it requested of the insured evidence of insurability; the insured failed to supply it although the Company provided him an opportunity to do so. On the question of insurability, it can not be reasonably contended that the Company was bound by the insured's own statement that he was in good health, particularly when, at the same time, he admitted having recently been under the care of a physician, without giving any details about the nature and length of the illness. The Company was fully justified in making a further investigation and, upon receiving the physician's report, which specifically stated that recovery was not complete, in requiring a physical examination. This condition precedent to reinstatement was never complied with.

Appellant's real contention is that the decision in this case is controlled by the ruling of the Kentucky Court of Appeals in Equitable Life Assurance Society v. Brewer, 225 Ky. 472, 9 S.W.2d 206, in which the Court held that the acceptance and deposit by the insurance company of a check from the insured in payment of a past due premium after the grace period had expired, waived the default, even though the company claimed that the check was accepted conditionally until it received evidence of insured's insurability. Similar cases from other jurisdictions are also cited to us. Due to material factual differences involved, we are of the opinion that the ruling in the Brewer case is not decisive of the present case. The payment involved in the Brewer case was for a past due premium, not a payment accompanying an application for reinstatement. It was tendered to the Company unconditionally as a premium payment, which fact is stressed in the opinion. The Court held that the acceptance and deposit of the check, so tendered unconditionally, could not be treated as a conditional acceptance in the absence of notice to the insured of the

conditions accompanying its acceptance. Such notice was not given in that case.

In the present case, the check was sent by the insured as part of his application for reinstatement. He was advised when the Company sent him the application form that upon its execution and return "the Company will be glad to consider your application." The reinstatement provision of the policy provided that he must satisfy the Company of his insurability, and in the application accompanying the check he authorized his physician to disclose any information acquired by him in his professional capacity or otherwise. This was far different from an unconditional tender. It was in fact just what it purported to be, namely, an application by the insured that the Company reinstate his policy, with full knowledge on his part that time would be required to consider the application and obtain evidence of insurability, and that it was possible for his application to be disapproved, in which event his payment would be refunded. That was the logical and reasonable understanding between the parties. The check was deposited in accordance with that understanding. There has been no attempt to vary the terms or conditions under which the check was tendered.

Even accepting appellant's contention that such was not the understanding when the check was tendered, the evidence is clear that such was the understanding between the parties after the check was received and deposited. The Company promptly mailed to the insured its "Temporary Acknowledgment," which expressly notified him that the payment and deposit was a conditional one pending determination of reinstatement. Accepting the recognized presumption of delivery in due course of mail, which is not rebutted, the letter reached insured's office on July 9th. It was on his desk still unopened on August 10th. The insured had been in regular attendance upon his office duties. He had a transaction pending with the Company involving an important matter. He had written to the Company, making a request. The return address gave him actual notice that the letter was from the Company. Under the circumstances, he was charged with notice of the contents of the letter. As stated in Cable Piano Co. v. Lewis, Jr., 195 Ky. 666, at page 672, 243 S.W. 924, at page 926, "Actual knowledge consists, not only as to what one certainly knows, but it also consists in the information which he might obtain by investigating facts which he does know and which impose upon him the duty to investigate." See also Mussman v. Pepples, 243 Ky. 674, 49 S.W.2d 592; Sentry Safety Control Corp. v. Broadway & 4th Avenue Realty Co., 276 Ky. 648, 656, 124 S.W.2d 1051.

In addition to such notice from the Temporary Acknowledgment, the insured had actual notice of the conditional character of the transaction in other ways. He was asked to authorize his physician to give the Company a report, with which he complied. Agent Montgomery notified him of the necessity of a satisfactory physical examination. He confirmed an appointment for such an examination. He told an office associate he had such an appointment. At no time did he claim that the reinstatement had automatically become effective. It was pointed out in the Brewer case that even a check tendered unconditionally can be accepted conditionally if the conditions are assented to by the one making the tender. "Such assent may be inferred, as any other relevant fact, from the silence of the other party after learning of the conditions, when it becomes his duty to act." 255 Ky. at page 479, 9 S.W.2d at page 209.

In the Brewer case, notice of the conditional acceptance was not given to the insured. It was on that ground that the Court distinguished the case from such cases as Gould v. Equitable Life Assurance Society, 231 N.Y. 208, 131 N.E. 892, and Crook v. New York Life Ins. Co., 112 Md. 268, 75 A. 388 in which cases the insured *was* notified of the conditions under which the money was being held. Those cases are more analagous to our case than is the Brewer case. See also Fidelity Mutual Life Ins. Co. v. Price, 117 Ky. 25, 77 S.W. 384.

We find no merit in appellant's further contention that the Company was

estopped to deny reinstatement by reason of its delay in acting upon the application. The evidence shows no unreasonable delay in processing the application. The insured was fully advised of the reason why the application was not immediately approved. It was the failure on the part of the insured to keep his appointment with the medical examiner that delayed the matter in its final stage. At no time was the insured led to believe that his application had been approved. This essential element of estoppel was entirely lacking. State of Oklahoma v. State of Texas, 268 U.S. 252, 45 S.Ct. 497, 69 L.Ed. 937; Kentucky Home Life Ins. Co. v. Kittinger, 262 Ky. 525, 529, 90 S.W.2d 673, 103 A.L.R. 1361; Carrington v. Kentucky Home Mutual Life Ins. Co., D.C.W.D.Ky., 61 F. Supp. 424, 428.

Judgment affirmed.