**James MALONE, Appellant,**

**v.**

**KENTUCKY FARM BUREAU
MUTUAL INSURANCE
COMPANY, Appellee.**

No. 2007–SC–000468–DG.

Supreme Court of Kentucky.

June 25, 2009.

David Vance Oakes, Saladino, Oakes & Schaaf, PLLC, Paducah, KY, Counsel for Appellant.

Michael Darin Moore, Paducah, KY, Counsel for Appellee.

Opinion of the Court by Justice ABRAMSON.

After sustaining injuries from a car accident, James Malone filed suit against Timothy Bruce, the other driver involved in the collision, and against Kentucky Farm Bureau Mutual Insurance Company (Farm Bureau), Malone's underinsured motorist insurance (UIM) carrier. Prior to trial, Malone accepted the offer of Bruce's liability insurance carrier for the limits of the policy in exchange for a release from further liability. Subsequently, Farm Bureau filed a motion for summary judgment with the McCracken Circuit Court, arguing that Malone had not provided, pursuant to KRS 304.39–320 and *Coots v. Allstate Ins. Co.*, 853 S.W.2d 895 (Ky.1993), proper notice of

his intention to settle his claim with Bruce's liability carrier and that the lack of notice extinguished Malone's claim against his UIM carrier. The circuit court agreed and granted Farm Bureau's motion. The Kentucky Court of Appeals affirmed that decision, concluding that Malone had never informed Farm Bureau of his intent to accept the proposed settlement and that Farm Bureau was entitled to summary judgment. Convinced that the Court of Appeals was correct in its analysis, we affirm.

## RELEVANT FACTS

The facts of this case are not in dispute. On November 22, 2002, Timothy Bruce drove his vehicle into the back of Malone's truck. Malone suffered property damage to the vehicle as well as physical injuries. When the accident occurred, Bruce maintained liability insurance through the Atlanta Casualty Insurance Company (Atlanta Casualty), and Malone had UIM coverage through Farm Bureau. On September 10, 2003, Malone filed an action in McCracken Circuit Court against Bruce, and later filed an amended complaint to add Farm Bureau as a defendant. Thereafter, in July 2005, Atlanta Casualty offered to pay the limits of its policy ($25,000) to Malone in exchange for a release from further liability. After receiving this offer, Malone's counsel delivered a letter via certified mail to Farm Bureau informing it of the proposed settlement.

The certified letter, dated July 28, 2005, stated in pertinent part:

Atlanta Casualty has advised that they have policy limits of $25,000.00 and this amount has been offered to settle their portion of Mr. Malone's claim. We are considering whether to accept this offer. In the meantime, because of the seriousness of Mr. Malone's injuries, we are making a claim for policy limits of all applicable policies issued by Kentucky Farm Bureau for underinsured motorist coverage.

By way of this letter, and in keeping with the mandates of K.R.S. 304.39–320, *Coots v. Allstate Insurance Co.*, Ky., 853 S.W.2d 895 (1993), and *Allstate Ins. Co. v. Dicke*, 862 S.W.2d 327 (Ky.1993), you must, within thirty (30) days consent to settlement with the wrongdoer or forward a check in the amount of the liability carriers' policy limits. If you wish to preserve your subrogation position you must advance a sum of money equivalent to the limits of liability of the wrongdoer's carriers.

The letter also directed Farm Bureau to sign and return a separate waiver form if it intended to waive its subrogation rights. On August 5, 2005, Farm Bureau's counsel responded to the letter, informing Malone that "you indicate that 'we are considering whether to accept [Atlanta Casualty's] offer.' When your client makes his decision, Farm Bureau can make its decision whether or not it is going to substitute payment in order to preserve its subrogation rights." Malone never responded to this letter and there was no further communication between Malone and Farm Bureau.

A month later, on September 9, 2005, Malone accepted Atlanta Casualty's offer and signed a release. On October 18, 2005, Bruce's counsel sent a letter to Farm Bureau informing it of Malone's settlement. Farm Bureau then filed a motion for summary judgment seeking a dismissal of Malone's UIM claim. Farm Bureau argued that Malone's purported notice, which stated only that he was "considering whether to accept this offer," was not sufficient notice of an agreement to settle as required by KRS 304.39–320, and that this lack of notice extinguished any later UIM claim by Malone against Farm Bureau. As noted, the McCracken Circuit Court

agreed and the Court of Appeals affirmed. Subsequently, this Court granted Malone's motion for discretionary review.

## ANALYSIS

■■ Summary judgment is proper if the record, when examined in its entirety, shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56.03. "The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.,* 807 S.W.2d 476, 480 (Ky.1991). When reviewing a court's decision to grant summary judgment, this Court must determine whether the trial court correctly found that there were no genuine issues of material fact. Because there are no relevant findings of fact in this case, the trial court's grant of summary judgment is not entitled to deference on appeal. *Schmidt v. Leppert,* 214 S.W.3d 309, 311 (Ky.2007).

■ The sole question before this Court is whether Malone's July 28, 2005 letter to Farm Bureau satisfied the notice requirements of KRS 304.39–320. That statute states in pertinent part:

(3) If an injured person or, in the case of death, the personal representative *agrees to settle* a claim with a liability insurer and its insured, and the settlement would not fully satisfy the claim for personal injuries or wrongful death so as to create an underinsured motorist claim, then written notice of the proposed settlement must be submitted by certified or registered mail to all underinsured motorist insurers that provide coverage. The underinsured motorist insurer then has a period of thirty (30) days to consent to the settlement or retention of subrogation rights. An in-

jured person, or in the case of death, the personal representative, may agree to settle a claim with a liability insurer and its insured for less than the underinsured motorist's full liability policy limits. If an underinsured motorist insurer consents to settlement or fails to respond as required by subsection (4) of this section to the settlement request within the thirty (30) day period, the injured party may proceed to execute a full release in favor of the underinsured motorist's liability insurer and its insured and finalize the proposed settlement without prejudice to any underinsured motorist claim.

(Emphasis supplied). The opening clause of subsection (3) unequivocally provides for its application in those circumstances where the injured party or a personal representative "agrees to settle" with another motorist and his liability carrier. An agreement to settle connotes not ongoing negotiations, not consideration of an outstanding offer but rather actual acceptance on the part of the injured party. Indeed, "agree" is defined variously as "1. To consent or accede to; say 'yes' 2. To be in harmony or accord 3. To be of the same opinion; concur with 4. To arrive at a satisfactory understanding (on or about prices, terms, etc.)." *Webster's New World College Dictionary* (3d ed.1988). Further, this Court held in *Coots,* 853 S.W.2d at 902, that the UIM insurer is entitled to notice of the settlement in order to protect its subrogation rights. In his July 28, 2005 letter, Malone's counsel merely stated that Atlanta Casualty had made an offer and "[w]e are considering whether to accept this offer." Plainly, no settlement agreement existed.

Malone contends that the notice he provided complied with the intent of KRS 304.39–320 because it apprised Farm Bureau of the impending, proposed settle-

ment and allowed Farm Bureau the opportunity to protect its subrogation rights. In making this argument, however, Malone disregards the threshold requirement of an actual agreement with the other motorist and his liability carrier by focusing exclusively on the statute's later use of the term "proposed settlement." In the context of KRS 304.39–320, the settlement between the injured party, on the one hand, and the other motorist and his carrier, on the other, is necessarily "proposed" as opposed to fully consummated because the underinsured carrier (Farm Bureau) has a statutory right, after receipt of proper notice, to "consent to the settlement or retention of subrogation rights." Under subsection (4) of the statute, the underinsured carrier can refuse consent, pay the amount that the tortfeasor/motorist and his carrier had agreed to pay and, after resolving the UIM claim with its own insured (in this case, Malone), seek subrogation against the underinsured driver's liability carrier and the underinsured driver himself. Thus, the statute contemplates a binding agreement between the injured party and the underinsured motorist and his carrier which will be finalized unless the injured party's underinsured carrier exercises its right to withhold consent and substitute its own money in exchange for preserving all subrogation rights against the underinsured motorist and his carrier. In short, "proposed settlement" does not allow for the circumstances present in this case; an offer from the other motorist and his liability carrier which the injured party is still deciding whether or not to accept.

Malone also argues that because the overall tenor of the July 28 letter clearly notified Farm Bureau of a pending settlement, he complied with KRS 304.39–320. Again, this argument disregards the essential function of the statute. A letter stating that a settlement offer is under consideration simply does not put the recipient on notice that the injured person has agreed to settle. Here, the letter related all required information in the usual underinsured motorist scenario *except* the central underpinning of KRS 304.39–320, a binding agreement to settle between Malone and the underinsured motorist and his liability carrier. Ironically, while the July 28 letter informed KFB what it "must" do under KRS 304.39–320, it never stated that Malone himself had done what he "must" do in order to invoke KRS 304.39–320, *i.e.*, "agree to settle" with the other motorist and his liability carrier. Having concluded that the trial court and the Court of Appeals were correct in requiring compliance with the unambiguous language of KRS 304.39–320, we affirm.

## CONCLUSION

In sum, although Malone's letter informed Farm Bureau that an offer had been tendered and provided Farm Bureau with instructions on how to protect its subrogation rights, as to whether he had actually agreed to settle, Malone merely stated that he was "considering whether to accept this offer." This purported notice only revealed that an offer had been made and was not sufficient under KRS 304.39–320 to put Farm Bureau on notice that "an injured person or . . . personal representative, *agree[d]* to settle a claim with a liability insurer and its insured." Thus, even though Malone allegedly intended to notify Farm Bureau of his agreement to settle, the plain language of his letter did not convey that an agreement had been reached as required by KRS 304.39–320. Accordingly, the Opinion of the Court of Appeals upholding the trial court's grant of summary judgment is affirmed.

MINTON, C.J.; NOBLE, and VENTERS, JJ., concur.

CUNNINGHAM, J., dissents by separate opinion in which SCHRODER and SCOTT, JJ., join.

CUNNINGHAM, Justice, dissenting:

Because I believe that Malone's letter satisfied the requirements of *Coots v. Allstate Ins. Co.*, 853 S.W.2d 895 (Ky.1993), I dissent.

KRS 304.39–320(3) requires that the injured party must give notice to the UIM carrier that a settlement has been *proposed*. If the UIM carrier fails to respond within thirty days, the injured party may "proceed to execute a full release." In other words, the injured party may then finalize the settlement offer. We have emphasized that the "underinsurer is entitled to *notice of the tentative settlement* and an opportunity to protect those potential rights by paying underinsurance benefits before release." 853 S.W.2d at 902, *quoting Schmidt v. Clothier*, 338 N.W.2d 256, 263 (Minn.1983) (emphasis added).

When reading KRS 304.39–320 and *Coots* together, it is clear that the injured party is required to give the UIM carrier notice of an intention to accept the tortfeasor's proposed settlement. The substance of the notice requirement is to relay to the UIM carrier that a settlement has been proposed and an intention to accept the settlement.

This Court has never identified a "magic phrase" that must be uttered in order to satisfy the requirements of *Coots*. However, we seem to have done so today. By focusing solely on Malone's statement, "We are considering whether to accept this offer," the majority has ignored the plain meaning of the overall correspondence. Any ambiguity created by this single sentence is fully and completely resolved when the letter is read in its entirety.

The letter is clear that an offer of settlement was made in the amount of $25,000.

The letter specifically stated that it was being sent in satisfaction of the requirements of KRS 304.39–320 and *Coots*. It informed Farm Bureau that it "must" respond "within thirty days." It further directed Farm Bureau to either consent to settle or forward a check "if you wish to preserve your subrogation position." Finally, the letter contained a separate "form waiver" for Farm Bureau to execute. The letter directed Farm Bureau to sign and return the waiver if it intended to waive its subrogation rights. Again, Malone directed Farm Bureau to return this form waiver within thirty days.

Farm Bureau asserts that its return letter to Malone illustrates its understanding that formal notice had not been received for the purposes of *Coots* and KRS. 304.39–320; however, this argument rests on the erroneous assumption that the sufficiency of notice depends on the recipient's understanding of the notice. "The essence of notice, when it is sufficient in form and content, is its *objective effect* on the person to whom it is given, not the subjective intent of the person who gives it." 58 Am.Jur.2d *Notice* § 2 (2008) (emphasis added). Our consideration should be limited to an objective analysis of Malone's notice letter, not the subjective interpretation by Farm Bureau. "Notice is but a medium of information, which if conveyed is sufficient notice. Notice 'is not a question of diligence but of knowledge of essential facts.'" *Jackson v. Int. Union of Operating Engineers*, 307 Ky. 485, 489, 211 S.W.2d 138, 141 (1948) (internal citation omitted).

The majority has placed too much focus on Malone's phrase, We are considering whether to accept this offer,' while ignoring the overall context within which that statement was made. Malone's July 29th letter to Farm Bureau is unambiguous in its direction to Farm Bureau regarding its

subrogation rights, and satisfies the requirements of KRS 304.39–320 and *Coots* by relating the required information. When read in its entirety, the letter clearly conveyed that a settlement had been offered to Malone and that Farm Bureau should act within thirty days if it wished to preserve its subrogation rights.

SCHRODER and SCOTT, JJ., join.