RENDERED:  MAY 30, 2025; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0683-MR

SHARON MUSE JOHNSON                                        APPELLANT


APPEAL FROM SCOTT CIRCUIT COURT
v.        HONORABLE C. HUNTER DAUGHERTY, SPECIAL JUDGE
ACTION NO. 24-CI-00371


KELLI KEARNEY                                                    APPELLEE


OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  CETRULO, KAREM, AND McNEILL, JUDGES.

CETRULO, JUDGE:  Sharon Muse Johnson ("Muse Johnson") appeals a Scott Circuit Court Order finding that the provisions of the Uniform Public Expression Protection Act ("UPEPA") were inapplicable to the instant case because Kelli Kearney ("Kearney") voluntarily dismissed her claims, before the trial court held a hearing on Muse Johnson's UPEPA motion.  After careful review of the record and applicable law, we reverse and remand.

## BACKGROUND

This case involves two political opponents in the 2024 Republican primary for Commonwealth's Attorney of the 14th Judicial Circuit.[1]  The relevant facts are not in dispute.  Muse Johnson was the incumbent, and Kearney was the challenger.

On March 14, 2024, the Royal Springs Fraternal Order of Police ("FOP") Lodge, located in Scott County, endorsed Muse Johnson.  Subsequently, on the belief that a social media post by Kearney created confusion concerning which candidate received the Royal Springs FOP endorsement, Muse Johnson added language to her campaign materials that stated, "Only candidate endorsed by the Fraternal Order of Police."[2]  At that time, Muse Johnson was the only candidate endorsed by the FOP.  However, Kearney later obtained an endorsement from the Castle Lodge FOP, located in Woodford County.

According to a letter – dated April 26, 2024 – written by the Kentucky FOP President and addressed to the citizens of the 14th Judicial Circuit, Kearney obtained an endorsement from the Castle Lodge FOP, sometime in mid to late April 2024.  On April 29, Kearney sent a cease and desist letter to Muse Johnson in

---

[1]  The 14th Judicial Circuit includes Bourbon, Scott, and Woodford counties.

[2] This language appeared on materials such as campaign signs, door hangers, and in electronic media.

which she demanded that Muse Johnson "immediately remove all signs stating that [Muse Johnson] [was] the 'only candidate endorsed by the [FOP]' as well as remov[e] all social media posts making this statement, as well as refrain[] from making any such verbal or other written statements." Further, Kearney demanded that all such materials/media "be corrected or removed by 5 p.m. Eastern Time May 1, 2024[.]"

On May 1, Muse Johnson replied and stated that she had already removed "the word 'only' from digital materials before receiving the cease and desist letter, but she [would] not remove her campaign signs, which were truthful when printed and posted back in March." Further, Muse Johnson said that she was "considering modifying the signs," but that it would not be possible for her to modify every one of her "120 signs" by Kearney's demanded deadline.

Additionally, Muse Johnson pointed out that the Kentucky FOP President's letter stated that the FOP did not believe Muse Johnson should be required to modify her campaign materials. Finally, Muse Johnson warned Kearney that, if Kearney filed a lawsuit for this issue, Muse Johnson would "vigorously defend herself and seek an award of her attorneys' fees, which are mandated under Kentucky law. [Kentucky Revised Statute ("KRS")] 454.478(1)." KRS 454.478 is part of the Uniform Public Expression Protection Act, or UPEPA.

The next day, Kearney did file a lawsuit in the Scott Circuit Court seeking a declaratory judgment, temporary and permanent injunctive relief, and "damages arising from [Muse Johnson]'s demonstrable false statements made about herself." That same day, Kearney filed a motion and memorandum in support of a temporary restraining order to enjoin Muse Johnson from making statements about being the only FOP endorsed candidate, and to require her to immediately remove any such statements from campaign material.

With early voting to begin on May 16, 2024, the circuit court set a hearing date of May 7, 2024 for the temporary restraining order and injunction. On May 6, Muse Johnson filed her response opposing Kearney's restraining order and temporary injunction. Therein, Muse Johnson advised that she would also be filing a UPEPA motion to dismiss. A few hours later, Muse Johnson filed her motion to dismiss pursuant to the UPEPA.

In those pleadings and at the hearing the next morning, Muse Johnson asked the circuit court to stay the proceedings, pursuant to UPEPA and specifically KRS 454.466. Instead, the court heard evidence and arguments on Kearney's temporary restraining order and injunction. At the close of those proceedings, the court made clear that it understood why Kearney brought the lawsuit, but that it believed Muse Johnson's explanation of the facts were the most reasonable. In regard to the UPEPA motion, the court stated:

I think this [referring to the Kearney complaint] was brought in good faith. I don't really want to get into 454. I don't want to be assessing attorney's fees. . . .

What I'm trying to do is avoid this statute entirely because . . . I think the defense is correct in that, if I entertain a motion to dismiss under this statute and I order the dismissal on their motion, then I'm required to impose attorney's fees. . . . [C]onsidering my ruling now, if the plaintiff voluntary dismissed the case with prejudice based on the efforts [of] Ms. Muse Johnson . . . then I don't have to get to a ruling on the motion to dismiss, which I just received this morning. . . . I would prefer it not to fit within this statute because I don't want to impose attorney's fees but the only way I cannot impose attorney's fees is if she is willing to voluntarily dismiss this with prejudice.

. . .

[I]f you don't voluntarily dismiss with prejudice then I'm required under 454 to consider their motion to dismiss, and if I dismiss it based on their motion, then I'm required to impose attorney's fees.

Muse Johnson disagreed with the circuit court's reading of the UPEPA statutes and pointed out that KRS 454.472(3) states "[a] voluntary dismissal with prejudice of a responding party's cause of action, or part of a cause of action, that is the subject of a motion under KRS 454.464 establishes for the purpose of KRS 454.478 that the moving party prevailed on the motion." Further, Muse Johnson argued, KRS 454.478 requires courts to award attorney's fees to a prevailing movant on a UPEPA motion to dismiss. The court responded:

I acknowledge what [KRS 454.472] says . . . that it should be considered prevailing on the motion, but I guess what

-5-

I'm going to do is try to make it work so that the motion was not filed until last night. I am going to not rule on the [UPEPA] motion, but I am going to rule on [Kearney's] original petition and my suggestion is that if [Kearney] would voluntarily dismiss with prejudice I wouldn't be getting to the motion, so [KRS 454.472](3) wouldn't apply. And the defense is taking issue with that, but I'm saying that's the way I would approach this procedurally in hopes that you all could just walk away and battle it out until the primary.

In response, Kearney orally dismissed the suit with prejudice, and Muse Johnson objected to Kearney voluntarily dismissing her cause of action with prejudice for the sole purpose of avoiding the mandatory attorney's fee provisions of the UPEPA. Muse Johnson argued again that KRS 454.466 required the circuit court to stay other proceedings until the court ruled on Muse Johnson's motion to dismiss. The circuit court had not stayed the proceedings.

The next day, the circuit court entered an order that commented on the timeliness of Muse Johnson's UPEPA motion and held, "[b]ecause [Kearney] voluntarily dismissed her petition prior to a hearing of [Muse Johnson]'s Motion to Dismiss, the court finds that the provisions of KRS 454.460-454.478 are inapplicable and that each of the parties shall bear her own costs and attorney fees." Muse Johnson appealed that order.

**STANDARD OF REVIEW**

Questions of statutory interpretation are questions of law, which we review *de novo*, "with no deference to the analysis of the lower courts." *Seeger v.*

-6-

*Lanham*, 542 S.W.3d 286, 290 (Ky. 2018) (citation omitted); *Davenport Extreme Pools and Spas, Inc. v. Mulflur*, 698 S.W.3d 140, 150 (Ky. App. 2024) (holding that we review a lower court's UPEPA determinations *de novo*). "[T]he plain meaning of the statutory language is presumed to be what the legislature intended, and if the meaning is plain, then the court cannot base its interpretation on any other method or source." *Maysey v. Express Servs., Inc.*, 620 S.W.3d 63, 71 (Ky. 2021) (quoting *Univ. of Louisville v. Rothstein*, 532 S.W.3d 644, 648 (Ky. 2017)).

Unless it "would produce an injustice or ridiculous result[,]" we should not "ignore the plain meaning of a statute." *Revenue Cabinet v. O'Daniel*, 153 S.W.3d 815, 819 (Ky. 2005) (internal quotation marks and citation omitted). "[W]hen construing multiple statutes, the statutes are read 'in harmony with one another in order to effectuate all statutes, if possible.'" *Kentucky Dep't of Corrs. v. Dixon*, 572 S.W.3d 46, 49 (Ky. 2019) (quoting *Castle v. Commonwealth*, 411 S.W.3d 754, 757-58 (Ky. 2013)). "In construing statutes, we 'presume that the General Assembly did not intend an absurd statute or an unconstitutional one.'" *Id.* (quoting *Shawnee Telecom Res., Inc. v. Brown*, 354 S.W.3d 542, 551 (Ky. 2011)).

## ANALYSIS

Muse Johnson argues that the circuit court erred when it declined to stay the hearing on Kearney's motion for the temporary restraining order until it

ruled on the UPEPA motion to dismiss. Additionally, she argues that, upon Kearney's voluntary dismissal with prejudice, the UPEPA required the circuit court to award attorney's fees to Muse Johnson.

Kentucky's UPEPA was only recently adopted in 2022, and there is little case law interpreting its provisions. It has been stated that this type of anti-SLAPP legislation establishes an expedited procedure for dismissing legal actions filed in response to a party's exercise of free speech, right to petition, or right to association. *Seiller Waterman, LLC v. Bardstown Capital Corp.*, 643 S.W.3d 68, 79-80 (Ky. 2022), *abrogated on other grounds by Bluegrass Tr. for Historic Pres. v. Lexington Fayette Urban Cnty. Gov't Plan. Comm'n*, 701 S.W.3d 196 (Ky. 2024).[3]

Under UPEPA, a party may file an expedited motion to dismiss no later than "sixty (60) days after [it] is served with a complaint, crossclaim, counterclaim, third-party claim, or other pleading that asserts a cause of action to which KRS 454.460 to 454.478 applies[.]" KRS 454.464.

"[O]n the filing of a motion under KRS 454.464 . . . [a]ll other proceedings between the moving party and responding party, including discovery and any pending hearing or motion, shall be stayed[.]" KRS 454.466(1)(a). Furthermore, KRS 454.466(2) states "[a] stay under subsection (1) of this section

---

[3] SLAPP stands for "Strategic Lawsuits Against Public Participation." *Id.*

shall remain in effect until entry of an order ruling on the motion under KRS 454.464 and expiration of the time under KRS 454.476 for the moving party to appeal the order." "KRS 454.478 *requires* the court to award court costs, reasonable attorney's fees, and reasonable litigation expenses related to the motion in certain circumstances." *Mulflur*, 698 S.W.3d at 153 (emphasis added).

Muse Johnson based her motion to dismiss on KRS 454.462(1)(c), the freedom of speech provision. When Muse Johnson filed her UPEPA motion on May 6, Kearney's claims came under the ambit of the UPEPA. KRS 454.466(1). At that point, the only lawful avenue for the parties, and the court, to move past the motion to dismiss was through the UPEPA provisions. KRS 454.466(2).

KRS 454.472(3) provides that a responding party's voluntary dismissal with prejudice of its claims that are the subject of a motion under UPEPA *establishes* that the moving party prevailed on the motion. When Kearney voluntarily dismissed her lawsuit with prejudice, at the circuit court's urging, the statute mandated that the court treat Muse Johnson as the prevailing party. KRS 454.478 states that "the court *shall* award court costs, reasonable attorney's fees, and reasonable litigation expenses related to the motion" to the prevailing party on the motion. *Id.* (emphasis added). Our Supreme Court "generally interpret[s] the word 'shall' to connote a mandatory sense unless the context of a

statute requires otherwise." *Kulkarni v. Horlander*, 701 S.W.3d 181, 188 (Ky. 2024) (citation omitted).

Once Muse Johnson prevailed on her motion, KRS 454.478(1) entitled her to an award of "court costs, reasonable attorney's fees, and reasonable litigation expenses related to the motion[.]" Pursuant to the plain language in KRS 454.478, courts **must** award fees to the prevailing party on a UPEPA motion in accordance with the statutes. Therefore, the circuit court erred when it found "that the provisions of KRS 454.460-454.478 [were] inapplicable" simply because Kearney voluntarily dismissed her claims before a hearing on Muse Johnson's UPEPA motion to dismiss. Instead, upon Kearney's voluntary dismissal with prejudice, the circuit court should have awarded Muse Johnson fees in accordance with KRS 454.478(1).

Kearney argues that Muse Johnson's motion was untimely, which the circuit court also suggested in its order, noting that the motion under UPEPA was not received by the court until the morning of the hearing on the restraining order sought by Kearney. We take no issue with the court's enforcement of its local rules as to how soon a court can conduct a hearing on a motion after it is filed and when an opposing party can respond. Kearney may be correct that, per the local rules, Muse Johnson's motion could not have been heard at the May 7 hearing, but the resolution of that question is irrelevant to our analysis and decision. Kearney's

timeliness argument does not apply to when a UPEPA motion can be filed, which is the relevant inquiry here. KRS 454.464 allows a party to file a UPEPA motion to dismiss within "sixty (60) days after a party is served with a complaint[.]" Kearney filed her complaint on May 2, 2024, and Muse Johnson filed her UPEPA motion to dismiss four days later. In other words, Muse Johnson timely filed her UPEPA motion to dismiss. KRS 454.464. As we have stated above, once Muse Johnson timely filed her motion, Kearney's claims fell within the confines of the UPEPA until the circuit court resolved the motion to dismiss. KRS 454.466(1)-(2).

Kearney then argues that there are no grounds for an appeal because the circuit court never actually ruled on Muse Johnson's UPEPA motion. The circuit court made clear that it attempted to "avoid [the UPEPA] entirely" because it believed Kearney brought her claims in "good faith." However, as our analysis above shows, a plain reading of the UPEPA's mandatory language does not confer our courts with such discretion. *See Maysey*, 620 S.W.3d at 71 (quoting *Rothstein*, 532 S.W.3d at 648) (holding that if a statute's meaning "is plain, then the court cannot base its interpretation on any other method or source"); *see also O'Daniel*, 153 S.W.3d at 819 (citation omitted).

The lack of a ruling on Muse Johnson's motion became irrelevant when Kearney voluntarily dismissed her claims with prejudice. At that point, KRS 454.472(3) required the circuit court to treat Muse Johnson as if she prevailed

on her motion, and KRS 454.478(1) required the court to award her attorney's fees. Instead, the circuit court erroneously held that the UPEPA was inapplicable. Muse Johnson objected to the court's reading of the UPEPA provisions below, and she timely appealed the circuit court's order to this Court. Therefore, Muse Johnson properly appealed to this Court.

Finally, Kearney suggests that UPEPA did not apply at all because the complaint was one for declaratory and injunctive relief. KRS 454.466 does provide exceptions from UPEPA's cause of action definition for certain motion practice. We note that Kearney's complaint sought damages from Muse Johnson, as well as injunctive and declaratory relief. However, even if the hearing fell within a KRS 454.466 exception, an exception to the mandatory stay does not remove the case from the domain of the UPEPA. Therefore, whether a stay exception applied or not became irrelevant when Kearney voluntarily dismissed her claims with prejudice.[4]

We know this because KRS 454.466(6), the voluntary dismissal exception, invokes the prevailing moving party provision of KRS 454.472(3). A plain harmonious reading of these two UPEPA statutes shows that the mere applicability of an exception does not render the cause of action removed from the

---

[4] Likewise, we do not address the argument of Muse Johnson that the circuit court erred by not staying the hearing as we have already found for Muse Johnson on other grounds.

"subject of a [UPEPA] motion[.]" KRS 454.466(6); KRS 454.472(3); *see Maysey*, 620 S.W.3d at 71 (quoting *Rothstein*, 532 S.W.3d at 648); *see also Dixon*, 572 S.W.3d at 49 (quoting *Castle*, 411 S.W.3d at 757-58). This reading of the UPEPA statutes must be accurate because a non-moving party's use of one of the exceptions, KRS 454.466(6), specifically triggers KRS 454.472(3), which is exactly what should have happened here.

Because the circuit court never addressed the merits of the UPEPA motion, whether Kearney's claims fell within the scope of the UPEPA or within any exceptions is not an issue properly before this Court. *Norton Healthcare, Inc. v. Deng*, 487 S.W.3d 846, 852 (Ky. 2016) (citations omitted) ("The proper role for an appellate court is to review for error – and there can be no error when the issue has not been presented to the trial court for decision."). The legislature mandated that when a plaintiff dismisses a complaint with prejudice after a UPEPA motion, the non-moving party must pay the movant's attorney's fees. While we can conceive of many potential abuses created by this language, we cannot avoid the mandatory nature of the statutes which is what the circuit court clearly sought to do.

## CONCLUSION

Accordingly, we REVERSE the Scott Circuit Court's order and REMAND for proceedings consistent with this Opinion.

-13-

ALL CONCUR.


BRIEFS FOR APPELLANT:

R. Kenyon Meyer
Sarah D. Reddick
Louisville, Kentucky

BRIEF FOR APPELLEE:

Luke Morgan
Lexington, Kentucky